UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————X

GERARD CORSINI,                                        Civil Action No.

                                    Plaintiff,

        -against-

MAYOR MICHAEL R. BLOOMBERG, POLICE
COMMISSIONER RAYMOND W. KELLY,
DISTRICT ATTORNEY CYRUS R. VANCE, JR,
ASSISTANT DISTRICT ATTORNEYS DANIEL          
GARNAAS-HOLMES AND LISA DELPIZZO,            **COMPLAINT**
DETECTIVE ERIC PATINO, DEPUTY INSPECTOR
ELISA A. COKKINOS, POLICE OFFICERS BENICIE
ALEZY, VICTOR COLON AND JESSICA
BUTTACAVOLI AND SGT. DIANA ANITRA OF THE
CITY OF NEW YORK, THE CITY OF NEW YORK,
ELIZABETH MORGAN AKA ELIZABETH MORGAN       **PLAINTIFF DEMANDS**
CARY, JONATHAN CARY, DANIEL J. MCKAY,       **A TRIAL BY JURY OF**
AARON SHMULEWITZ, BELKIN BURDEN              **ALL CLAIMS AND**
WENIG & GOLDMAN, LLP, AND JOHN DOES          **ISSUES SO TRIABLE**
1-20 AND JANE DOES 1-20

                                    Defendants
———————————————————————X

        Plaintiff *pro se*, Gerard Corsini, as and for his complaint in this action, alleges as
follows:

### Parties, Jurisdiction, Venue and Summary of Claims

    1. Plaintiff resides and, at all times material hereto, has resided at 433 W. 21st Street,

in the City and County of New York, where all of the conduct alleged herein took place

and is suing pursuant to

    (a) 42 U.S.C. §1983 and 1985 for damages against defendants for committing and

conspiring to commit acts, under color of state law, with the intent and for the purpose of

depriving plaintiff of rights secured under the First, Fourth and Fourteenth Amendments

of the Constitution of the United States, including in retaliation for the exercise of

plaintiff's clearly established First Amendment rights to speak about and document

through public photography public commercial activities of public interest that involve

violations of City zoning laws and regulations on plaintiff's historic, residentially zoned

block in order to petition the City, its agencies and defendants Bloomberg, Kelly and

Cokkinos to enforce those laws and regulations and for denying him equal protection of

those laws and regulations and of the State of New York, through false arrests and

malicious prosecutions which are apparent to any reasonable and properly trained police

officer, not to mention district attorney and his assistants, including from the insufficient

criminal complaints themselves, as part of a policy, custom and usage of defendants the

City, Bloomberg (the person with final policy making authority), Kelly and Vance, which

had the force of law, to permit violations of civil zoning laws and regulations by certain

industries and individuals favored by defendants Bloomberg and the City and to take all

measures necessary to cover up and prevent enforcement of those violations, including

arresting without cause and maliciously prosecuting anyone who persisted, after improper

advocacy by and threats of the defendant police officers, in documenting same to petition

for such enforcement, for the purpose of punishing and deterring the exercise of those

rights and preventing the enforcement of those laws as well as discouraging plaintiff from

commencing litigation for redress of the violation of his constitutional rights resulting

from his first false arrest and malicious prosecution that terminated in his favor (thereby

denying him due process), all in violation of the First, Fourth and Fourteenth

Amendments, including, in addition to humiliating and repeated, horrific false arrests and detentions, the issuance of unnecessary protective orders and burdensome court appearances that were intended and resulted in the deprivation of plaintiff's liberty and had the additional abusive and intended collateral purpose, together with the false arrests and malicious prosecutions, of making it so unbearable that neither he nor a person of ordinary fortitude would fail to give up his constitutional rights and would accept an offer to dismiss the compounded and compounding malicious criminal proceedings commenced against him on the condition that he accept permanent deprivations of his rights and liberties in further violation of the First and Fourteenth Amendments; and

(b) based upon supplemental jurisdiction, for compensatory and punitive damages under state law for false arrest, malicious prosecution, malicious abuse of process (namely the commencement of malicious criminal proceedings and the issuance of unnecessary and unwarranted protective orders for the improper collateral purpose of preventing, punishing and deterring the exercise of plaintiff's constitutional rights and his right to sue for redress of their violation and forcing him to accept deprivations of his liberty in exchange for the dismissal of the malicious prosecutions and the protective orders issued in those proceedings) and the intentional infliction of emotional distress in connection therewith arising out of the November 2, 2011, detention, false arrest without probable or other lawful cause and malicious prosecution of plaintiff (including the issuance of a protective order denying him liberty and curtailing his First Amendment rights) which was utterly baseless as a matter of fact and law, including on the face of the criminal complaint itself (which makes clear, among other things, that the order had expired before the alleged violations and that the alleged conduct was permitted by the

order), was never converted to an information and was terminated in plaintiff's favor on March 13, 2011.

2. Defendants Mayor Bloomberg, Police Commissioner Kelly, District Attorney Vance, Assistant District Attorney DelPizzo, Assistant District Attorney Garnaas-Holmes and detective Patino, Deputy Inspector Cokkinos, police officers Alezy, Colon, Buttacavoli, Sgt. Anitra and John Does 1, 2, 3, and 4 (members of the 10th precinct at 230 W. 20th Street, NYC) are all sued herein under Sections 1983 and 1985 in their individual and personal capacities and all acted, as alleged above, under color of state law, with the intent and for the purpose of depriving plaintiff of rights secured under the First, Fourth and Fourteenth Amendments of the Constitution of the United States,.

3. This Court has jurisdiction pursuant to 28 U.S.C. Sections 1331, 1343 (3) and (4) and 1367.

4. Venue in this judicial district is appropriate under 28 U.S.C. Sections 1391(b) in that all of the events that gave rise to the claims herein occurred in this district.

5. Defendant Elizabeth Morgan at all times alleged herein and material hereto has been an owner with her husband defendant Jonathan Cary of the residential property at 441 West 21st Street in the City, County and State of New York (the "Property" or the "Residence") which is located one building from plaintiff's residence and which, although zoned for exclusive residential use, was renovated to serve as, and has been used and licensed by defendants Morgan and Cary as, a commercial film and photography studio in violation of applicable zoning regulations, in addition to its use as a part-time residence for defendants Morgan and Cary and their family.

6. Defendant Morgan all times alleged herein and material hereto acted both for

herself and as an agent and in concert and conspiracy with defendant Jonathan Cary and at his direction and/or for his benefit and with his agreement, encouragement, inducement, substantial assistance, aid, abetment, approval, consent and ratification.

7.  Defendant McKay at all times alleged herein and material hereto was an employee of defendants Morgan and Cary acting within the course and scope of his employment and/or a person acting at the direction of and in concert with said defendants, under their control, as their agent, for their benefit and with their inducement, agreement, approval, consent and ratification, including in supervising, coordinating and otherwise assisting with commercial film and photography shoots illegally conducted at their residence, and was deliberately retained by defendants Morgan and Cary even though unfit, including after his vicious stabbing of a cab driver in front of plaintiff's residence  over a parking dispute prior to the events alleged herein.

8.  The block on which defendants Morgan's and Cary's residence (as well as plaintiff's residence) is located is zoned for residential use only as reflected on the certificate of occupancy issued for the Property, and defendants Morgan's and Cary's use of their residence since at least 2009 for highly disruptive commercial film and photography shoots has been in violation of New York City laws, rules and/or regulations applicable to the zoning for, and permitted use of, the Property and the certificate of occupancy relating thereto.

9.  Defendants Aaron Shmulewitz and Belkin Burden Wenig & Goldman, LLP ("Belkin"), at all times material hereto have purported to be experts in real estate law, including zoning law, and notwithstanding the illegality of Morgan's and Cary's extensive and highly promoted business use of their residence for commercial film and

photography shoots, known to and assisted by them, designed a common plan with and at
the request and for the benefit of defendants Morgan and Cary to cover up violations of,
and to prevent enforcement of, the applicable zoning laws and regulations and
substantially aided, abetted, encouraged and assisted defendants Morgan and Cary in
carrying out that plan which involved, among other things, Morgan's and Cary's urging,
causing, inducing and conspiring with defendants Patino, Kelly, Bloomberg, Vance,
DelPizzo and Garnaas-Holmes to effect numerous false arrests and have Patino and
Morgan commence malicious prosecutions of plaintiff, commencing on August 31, 2011
and September 1, 2011, and continuing through July 25, 2012 (two complaints have been
dismissed and three remain pending) in violation of the Fourth, First and Fourteenth
Amendments based upon false charges against plaintiff and misrepresentations under oath
(perjury) in support thereof, including false reporting and perjury in violation of the New
York State penal code with respect to plaintiff's conduct alleged in various complaints to
the Police Department by defendants Morgan and McKay, and in criminal complaints and
depositions supporting same, including concerning alleged violations of protective orders,
as well as false statements under oath by Morgan and Patino known to defendants Vance,
Kelly, Bloomberg, DelPizzo and Garnaas-Holmes who himself committed perjury with
the knowledge and approval of defendants Vance and DelPizzo, all for the purpose of
criminalizing the First Amendment through false reporting, false charges, false arrests,
malicious prosecutions and perjury in support thereof devised by Shmulewitz and Belkin
in conspiracy with defendants Morgan and Cary in violation, among other things, of
Shmulewitz' and Belkin's most fundamental and sacrosanct professional responsibilities.

   10.  Defendants Shmulewitz and Belkin at all times material hereto acted in concert

with and as the agents of defendants Morgan and Cary and aided, abetted and conspired

with and otherwise provided substantial assistance and encouragement to defendants

Morgan and Cary in pursuance of said common plan of defendants Shmulewitz' and

Belkin's principal design to commit the criminal and other unlawful conduct alleged

herein with the full knowledge of its illegality and with the intention of furthering same to

harm plaintiff, including, without limitation, by means of knowingly false statements and

unfounded, improper and unlawful threats of litigation and disciplinary proceedings and

of abusive and malicious criminal prosecution, all for the improper purpose of deterring

the exercise of plaintiff's First Amendment and other rights to document by photography

public commercial activities and traffic, safety and other violations involving illegal

commercial film and photography shoots at defendants Morgan's and Cary's Property, so

as to prevent plaintiff from petitioning government agencies to address same.

**First Cause of Action**

   11.  Plaintiff realleges as if fully set forth herein each and every allegation in
paragraphs 1-10, inclusive, above.

   12.  Defendants Morgan, Cary and McKay and, on information and belief defendants

Shumulewiz and Belkin, Burden, Wenig & Goldman ("Belkin"), have know of plaintiff's

opposition to and complaints to city officials concerning commercial activities at 441

since 2009, including with respect to a highly disruptive and illegal shoot in August, 2009

and another by Saturday Night Live ("SNL") at 441 on April 15, 2010, with blazing

lights into the early morning hours and heavy equipment on the sidewalk without any

permit whatsoever, as to which defendant Morgan claimed through defendant McKay,

who approached plaintiff on the street the next day to tell me that NBC had lied "to us"

about having a permit, which NBC later said was completely false and that defendant Morgan or her representative had been informed of the lack of a permit and assured them that "the neighbors would not mind". (Plaintiff arranged for NBC to make a $2500 contribution to the block association to compensate for the disruption, further evidencing my "legitimate purpose", and Saturday Night Live apologized profusely for that disruption and, after viewing plaintiff's video, www. bit.ly/441video, informed plaintiff that it was shocking and that they would also be very upset if they lived on the block).

13. The complicity of the City, the Police Department and defendants Bloomberg, Cokkinos and Kelly in these violations was first apparent to plaintiff when he called the 10th precinct to see if there was a permit for the shoot on file for the SNL shoot and was told that there was, but when he asked to come to the precinct to see it, was told by the same person that, in fact, there really was no permit on file, namely that he had lied to plaintiff, which he did not dispute.

14. When plaintiff then asked that a patrol car go to 441 to ascertain if there was a permit, plaintiff was flatly told that the police department would never shut down a shoot even when there was no permit and the use of public property in violation of the law, without approval of the Mayor's Office, and the officer therefore refused to send out a patrol car and made no attempt to get a hold of anyone in the Mayor's Office. He then put plaintiff on "hold" for any eternity, and when he called him back, after identifying himself at the request of the operator, he was put on hold again only to be told, quite unbelievably, that the officer had left. When he called defendant Kelly's office that night to get action, nothing was done, and no one called him back the next day.

15. Similarly, complaints to the Mayor's office, as with a shoot in August, 2009, were

met with intentional misstatements and evasions designed to avoid enforcing the public property laws that had been violated by NBC and later by further misstatements and inaction which resulted in no punishment or fine whatsoever to NBC even though severe action had been promised by the Mayor's Office if what had been complained about was true, which the Mayor's Office acknowledged was the case as well as the serious nature of the violations.  The Mayor's Office later engaged in extreme bad faith in failing to comply with and imposing conditions utterly inconsistent with FOIL and otherwise seeking to evade production of documents with respect  to permits for shoots on plaintiff's block, including by blatant misrepresentations of its counsel and Deputy Commissioner.

16.  On April 29, 2011, defendants Morgan, Cary and McKay, aided and abetted by defendants Shmulewitz and Belkin, urged, induced caused and conspired with defendants Buttacavoli, Alyse, Anitra and John Doe 1, a fellow officer, to commit assaults and batteries upon plaintiff for exercising his First Amendment right to take photographs in public of public commercial activities and of public traffic and safety violations on his block and to illegally detain, falsely imprison and falsely arrest plaintiff without reasonable, probable or other cause in order to deter and punish the exercise of those rights and to prevent exposure of defendants Morgan's and Cary's illegal conduct.

17.  Defendants Buttacavoli, Alyse and Anitra (as well as defendant Colon and detective Patino as alleged herein) had all been on notice of and willfully and recklessly disregarded the illegality, unconstitutionality and impropriety of their conduct, were inadequately trained and supervised, including by defendants Cokkinos and Kelly as part of policy and practice of deliberate indifference to plaintiff's and other's constitutional

rights and the need for training and supervision with respect thereto and improperly

sought to use their authority (including pursuant to an unlawful agreement/conspiracy

with defendants Morgan and Cary prior to April 29, 2011, after being warned of the

impropriety of their conduct by the community affairs officer) to benefit defendants

Morgan and Cary and their illegal activities in knowing violation and/or reckless

disregard of and indifference to plaintiff's constitutional and other rights and the laws of

the State of New York.

18.  As a direct and proximate result of the above, on April 29, 2011, plaintiff was

improperly detained by defendants Buttacavoli and Alyse, was physically and offensively

grabbed, assaulted and battered by defendant Alyse and prevented thereby and otherwise

from exercising his First Amendment right to photograph in public and was thereafter

falsely arrested and handcuffed in his apartment, taken in front of his neighbors to a

police car and jailed by defendants Buttacavoli, Alyse, Anitra and John Doe 1 for having

exercised those rights, causing him humiliation, severe emotional distress, physical injury

and deprivation of his civil and constitutional rights, including under the First and Fourth

Amendments.

19.  On April 29, 2011, as a direct, proximate and intended cause of the above

malicious conduct of defendants Morgan, Cary and McKay, aided and abetted by

defendants Shmulewitz and Belkin, defendants Buttacavoli, Alyse, Anitra and John Doe 1

maliciously commenced a criminal proceeding without any basis or merit by service of a

complaint/summons, which proceeding was maliciously intended by said defendants and

by defendants Morgan, Cary and McKay, aided and abetted by defendants Shmulewitz

and Belkin, to serve the collateral and improper purpose of preventing exposure of

defendants Morgan's and Cary's illegal activities by deterring and punishing the exercise

of plaintiff's First Amendment and other constitutional rights and by causing

plaintiff severe emotional distress, humiliation and other damage, which it did.  That

complaint was dismissed by the court on June 20, 2011, on its own motion.

## Second Cause of Action

20.  Plaintiff realleges as if fully set forth herein each and every allegation in

paragraphs 1-19, inclusive, above.

21.  After plaintiff's first false arrest on April 29, 2011, and after repeated, urgent

written pleas to defendant Kelly and defendant Cokkinos, the commander of the 10th

precinct, that she meet with plaintiff to avoid any future false arrests (plaintiff also made

repeated urgent pleas to defendant Kelly to meet with a member of his staff which were

ignored, although a number of people called plaintiff as part of a cover-up), the

commander of the 10th precinct, defendant Cokkinos, did meet with plaintiff on June 21,

2011, and, amazingly, indicated that she could not understand why plaintiff would be

concerned that he had been lied to about the permit or the refusal to enforce the public

property laws that had been egregiously violated, making clear, as do the corrupt arrests

and prosecutions of  plaintiff and other evidence in his cases, the policy and custom of the

City, including of Mayor Bloomberg and Commissioner Kelly, to permit the "film"

industry to violate the laws and defendants Kelly's, Bloomberg's, Patino's, Vance's,

DelPizzo's, Garnaas-Holmes' and the City's willingness as part of that policy to go to any

lengths necessary, including plaintiff's multiple unconstitutional false arrests and

malicious prosecutions, to prevent exposure of that policy, custom and usage and of the

violations of law by the "film industry" permitted and covered up thereby.  Attached

hereto as Exhibit "1" is a letter addressed to plaintiff by the Deputy Commissioner of the

Department of Buildings in charge of enforcement and delivered to those in attendance at

a meeting at the Mayor's Office attended by Community Board 4 members,

representatives of Speaker Quinn and Borough President Stringer's offices and others and

which references a "custom" that not only has no foundation in law but also is antithetical

to applicable law as to which no explanation is given and as to which the Department of

Buildings therefore, at the prompting of the Mayor's Office, refused to send a

representative to explain said "custom" or what was meant by "occasional", which , in

any event, as the writer and everyone else knows, can by no reasonable means apply to

the highly disruptive and sustained commercial activities of defendants Morgan and Cary

which it is nonetheless offered to support in consultation with the Mayor's Office and the

Mayor's Law Department, among others..

22.  Defendant Cokkinos also amazingly said that plaintiff's having been handcuffed

in his apartment by three officers and a sergeant (after he had repeatedly explained to

them the legitimate and First Amendment purpose of his photography; his lack of intent

to annoy or harass or any interest in defendant Morgan; his presentation to the local block

association of his photographs; the support of local officials; the zoning regulation; and

the law of harassment requiring, among other things, the lack of a legitimate purpose and

an intent to annoy or alarm and also offered to show them all of the photographs he had

taken and urged them to contact the community affairs officer who was fully familiar

with his legitimate purpose, which they listened to but utterly disregarded--after

plaintiff's explanation and urgings, defendant Buttacavoli, Morgan's "chum", merely

shook her head at the Sergeant, leading to his arrest); and plaintiff's then being taken in

front of his neighbors downstairs and transported to and jailed in the 10th precinct for

hours and given a complaint and summons did not constitute an arrest--something she

emphatically repeated over my incredulous dissent, including my reference to *Terry v.*

*Ohio.*

23. Defendant Cokkinos further stated that notwithstanding a detailed letter from

plaintiff outlining questions concerning his arrest and extreme bias of the 10th precinct in

favor of defendant Morgan and in violation of his constitutional rights, she had not

interviewed the officers and sergeant involved, had not read any of his numerous e-mails

to her, about which she claimed to know nothing, and could not answer any of his

questions, including those in his letter, other than to say that she had reviewed all of the

complaints against him (which she said often referred to me as a suspicious person, even

though Morgan knew exactly who plaintiff was and his purpose, clearly to create a false

sense of danger and urgency) and reports before that date, June 21, 2011 (including on

June 9 when an officer lied to plaintiff about defendant Morgan's not having complained

about harassment, allowed plaintiff to videotape public commercial activities, saying that

he was "fully aware of the situation", and then filed a report, and Morgan a complaint, at

the urging of defendant Morgan even though nothing other than public photography

protected by the First Amendment was involved and had been permitted by the officer),

and that "you can take all the pictures you want" but that he should not obstruct the

shoots, which he never had or did. Shortly, thereafter, she added as an aside/addendum:

"and don't harass anyone"--not, don't "stalk' anyone---the charge of the September 1,

2011 complaint after the complaint for harassment had been dismissed), by which

plaintiff understood her to mean not to get in anyone's face", which the community

affairs officers had said on January 10, 2011, when he told plaintiff and defendant

Morgan that he had a right to take pictures as long as he did not get into anyone's face,

which he had never done.

24.  Indeed, Detective Ficken of the 10th precinct later informed plaintiff (after

coming to his apartment with two other detectives unannounced at 11:00 p.m. on a Friday

night to investigate further false contempt charges of defendant Morgan made in April,

2012, involving, among other things, alleged conduct nearly a month  earlier on March

13, 2012 (the very day the first contempt case--one of the subjects of this complaint-- and

the protective order therein were dismissed, when defendant Morgan was stalking

plaintiff with a video camera while he was walking his dog), for which he would not

arrest plaintiff (although he made clear further false reporting of Morgan concerning her

children, namely that she had claimed that plaintiff had taken pictures of her and her

children which was utterly false), but for which defendant Patino ultimately did arrest

plaintiff after he had been "investigated" for misconduct in his prior arrest(s) of plaintiff,

for the third time, on false and insufficient grounds known to him, defendants Kelly,

Vance, DelPizzo and Garnaas-Holmes, and as to which he also committed perjury

involving alleged photography of Morgan's <u>house</u>, not of her children, allegations which

could nonetheless <u>not</u> violate the protective order in effect), that "someone very high up

in the city is behind all of this [the multiple false arrests and prosecutions] because I have

seen things in your file which I have not seen in my [20?] years" either on the force or as

a detective, including the fact that the protective order in the stalking case had been

drawn up before the criminal complaint, something he said was highly unusual and that

he had never seen before and a clear indication that there were powerful people behind

the complainant, defendant Morgan.

25.   Notwithstanding plaintiff's urgent pleas to defendants Kelly and Cokkinos that his constitutional rights not be further violated, the statements and assurances of defendant Cokkinos given plaintiff on June 21, 2011, and a letter from her dated June 24, 2011, thanking plaintiff for meeting with her, expressing mutual concern about the issues raised, including film activity both at Morgan's and Cary's property and elsewhere on the block and the disruption and violations resulting therefrom, and her offering to work to address those violations of mutual concern, as a direct and proximate result of a policy of reckless indifference to plaintiff's and others constitutional rights as well as the need for training and supervision of those under her and defendant Kelly's commands with respect thereto, on June 29, 2011, defendants Morgan and Cary, aided and abetted by defendants Shmulewitz, Belkin and McKay, acting pursuant to the above-mentioned plan, directed, induced and caused defendant Jane Doe 1 to make false reports about and to charge at plaintiff in the street when he was videotaping from a distance an unattended truck illegally blocking the fire hydrant, screaming to create the false impression that he was doing or had done something both wrong and criminal and to slander him by stating that he was a "perv", a "stalker", "interested in young girls", "a creepy porno mate" and that he was "crazy", which was heard by passersby and neighbors.

26.   As a result of defendant Jane Doe 1's false reporting, defendant Colon arrived on the block with John Doe 2 and improperly detained and seized the plaintiff, and after Jane Doe 1 had made the same statements to defendant officer Colon on behalf of the above-mentioned defendants, defendant Colon, without asking plaintiff a single question and being unwilling to listen to plaintiff or his explanations, including that he had met

recently with his commanding officer and her assessment and comments, and based

solely on the defamation that defendant Jane Doe 1, a complete stranger to plaintiff and

the neighborhood, had published to defendant Colon at the request of defendants Morgan,

Cary and McKay pursuant to the above-mentioned plan devised and aided and abetted by

Shmulewitz and Belkin, having violated plaintiff's Fourth Amendment rights, violated

his First and Fourteenth Amendment rights by demanding that plaintiff stop videotaping

in public, including a truck illegally parked for hours, and leave, threatening him that if he

did not do so plaintiff would be taken to a mental ward of a hospital.

27.  Said outrageous conduct, not only violated plaintiff's First, Fourth and Fourteenth

Amendment rights but also was intended to and did cause plaintiff severe emotional

distress.

28.  Defendant Colon's and John Doe 2's violations of plaintiff constitutional rights

and their intentional infliction of severe emotional distress were a result not only of

inadequate training of officer Colon and a failure of the command of the 10th precinct, the

Police Department and defendant Kelly to inform officers who might respond about the

issues presented by defendant Morgan's repeated criminal false reporting and false

complaints known to them, including as a result of a meeting between the plaintiff and

the commander of the 10th precinct on June 21, 2011, and as a result of numerous e-mails

to defendant Kelly during and since May, 2011, which made defendant Kelly fully aware

of said false reporting, plaintiff's legitimate and constitutionally protected purpose and

the lack of any criminal conduct in connection therewith, but also a policy of corruption

within the Police Department and more generally the Bloomberg Administration and its

Mayor's Office of Film, Theatre and Broadcasting, substantially aided and assisted by

defendant Kelly in concert with defendant Bloomberg, to benefit the "film industry",

including defendants Morgan and Cary, at any cost, including the false arrests and

malicious prosecutions of plaintiff and those like plaintiff who exercise or have exercised

their First Amendment rights to expose illegal activities of industry members.

29. Defendant Kelly was fully aware of the matters raised at the meeting and the

rights of plaintiff affirmed thereat but nonetheless willfully and knowingly failed to

prevent the violation of plaintiff's constitutional and other rights by defendant Colon as

well as the humiliation and severe emotional distress caused thereby for the corrupt

purpose of benefiting defendants Morgan and Cary and the "film industry" in concert

with defendant Bloomberg, who shared that objective and the illegal means alleged herein

to accomplish it.

30. On or about May 27, 2011, and numerous times thereafter, plaintiff made

defendant Kelly fully aware of the false and criminal reporting of defendant Morgan and

others in connection with the prior April 29, 2011, false arrest of plaintiff, the

unconstitutionality and lack of probable or other cause for that arrest and for any future

such arrests/detentions and the severe emotional distress and humiliation which had been

caused plaintiff on April 29, 2011 and would be caused him by any future such false

detentions/arrests.

31.. Defendants Kelly and Cokkinos with full knowledge of the criminality of

defendant Morgan's false reporting and of the unconstitutionality (including severe

violations of the First and Fourth Amendments) and illegality of any further

detentions/arrests of plaintiff based on similar future false reporting, and notwithstanding

the likelihood thereof and plaintiff's legitimate and constitutionally protected purpose,

knowingly approved of and/or permitted through a policy of reckless indifference the further violation of plaintiff's First, Fourth and Fourteenth Amendment rights by defendant Colon and subsequently by detective Patino notwithstanding repeated, urgent pleas from plaintiff to defendants Kelly and Cokkinos to prevent such violations of plaintiff's constitutional and other rights which defendants Kelly and Cokkinos had a duty to prevent, particularly after plaintiff's meeting with defendant Cokkinos, the commander of the 10th precinct, on June 21, 2011, when he had been assured that those rights would be protected.

32.    As a result of said conduct of defendants Colon, John Doe 2, The City of New York, Bloomberg, Kelly, Morgan, Cary, Shmulewitz, Belkin and McKay, plaintiff was unlawfully detained/imprisoned, his constitutional and other rights were seriously violated, including his First, Fourth and Fourteenth Amendment rights, and plaintiff, among other things, suffered humiliation and severe emotional distress as had been intended by defendants.

**Third Cause of Action**

33.  Plaintiff realleges as if fully set forth herein each and every allegation in paragraphs 1-32, inclusive, above.

34.  On August 31, 2011,  defendants Morgan and Cary, aided and abetted by and in conspiracy with defendants Shmulewitz, Belkin and McKay and in furtherance of the above-mentioned common plan urged, induced, caused and conspired with defendant Patino and defendants Vance, DelPizzo and Garnaas-Holmes acting on behalf of themselves and defendants The City of New York, Michael Bloomberg and Raymond Kelly in furtherance of the custom, practice and policy which had the force of law

mentioned above, with their full knowledge and approval and in knowing and willful

breach and violation of plaintiff's constitutional rights, to create false and insufficient

criminal charges which would serve as a basis for plaintiff's false arrest and malicious

prosecution pursuant to a complaint signed by detective Patino and based thereon to have

plaintiff falsely arrested and imprisoned without reasonable, probable or other cause for

having exercised his First Amendment right to take photographs in public of public

commercial activities and public traffic and safety violations on his block, in order to

deter, punish and retaliate for the exercise of those rights and thereby prevent exposure of

defendants Morgan's and Cary's illegal activities and to retaliate against plaintiff both for

the exercise of his constitutional rights and to deter his redress of their violation and

cause him humiliation, severe emotional distress, physical injury and deprivation of his

civil and constitutional rights, including under the First, Fourth and Fourteenth

Amendments, which said defendants did maliciously and without cause.

35. Defendant Patino (as well as defendant Kelly) was fully aware of the

unconstitutionality of his arrest of plaintiff, of the legitimate and constitutionally

protected purpose of plaintiff's photography (including as used in an internet video

petition to government officials, many of whom supported his efforts) and his conduct; of

Cokkinos' opinion after review of all of the complaints against plaintiff that plaintiff's

conduct had not violated and would not violate any laws and was constitutionally

protected and her support of plaintiff's concerns as set forth in her letter of June 24, 2011;

of the utter insufficiency and falsity of the complaint corruptly filed by him on behalf of

defendant Morgan; and yet he nonetheless willfully refused to listen to, ask a single

question of plaintiff or consider anything said by plaintiff concerning same in willful and

wanton disregard of the illegality of his conduct, with the full knowledge and approval of defendants Kelly, Bloomberg, Vance, DelPizzo and Garnaas-Holmes for the corrupt purpose of benefiting defendants Morgan and Cary and the "film industry" of which they were a part.

36. On August 31, 2011, defendant Patino acting on behalf of himself and defendants The City of New York, Michael Bloomberg, Raymond Kelly and Vance, DelPizzo and Garnaas-Holmes induced and aided and abetted by and in concert with defendants Morgan, Cary and McKay, themselves aided and abetted by defendants Shmulewitz and Belkin, further violated plaintiff's constitutional rights, including under the First, Fourth and Fourteenth Amendments, as well as his rights of privacy (a) by illegally seizing plaintiff's cell phone and camcorder as evidence without a search warrant or probable cause which defendant Patino and defendant The City of New York and its Police Department thereafter refused to return; (b) by viewing without any request to or consent of plaintiff and without a search warrant or probable or other cause or justification all of the extensive photos and video on plaintiff's cell phone and camcorder, including very personal and private photos and (c ) by lying to plaintiff in reckless disregard of his right to medical treatment that any request for same would delay his processing and that he should lie to the medical officer to avoid same, which plaintiff did, putting himself at risk, only to find out when in his cell that a posted sign specifically stated that any request for medical treatment would not delay processing.

37. Defendant Patino had been on notice and knew of the illegality and impropriety of his conduct and of the utter lack of grounds for and unconstitutionality of said arrest and conduct; willfully ignored same to corruptly benefit defendants Morgan and Cary and

their illegal commercial activities with the full approval of defendants Kelly and

Bloomberg and with the aid of defendants Vance, DelPizzo and Garnaas-Holmes; was

inadequately trained and supervised and improperly and corruptly sought to use his

authority to benefit defendants Morgan and Cary and their illegal activities in knowing,

wanton and willful violation and/or willful and reckless disregard of and indifference to

plaintiff's constitutional and other rights and in connection therewith intended by such

false arrest and such conduct to cause and did cause plaintiff severe emotional stress and

humiliation in addition to injury to his constitutional rights, including under the First,

Fourth and Fourteenth Amendments.

38   On or about May 27, 2011 (long before the illegal and unconstitutional arrest of

plaintiff by defendant Patino and defendant Patino's illegal and unconstitutional viewing

of plaintiff's photos and video and his illegal seizure of plaintiff's cell phone and

camcorder as evidence on August 31, 2011) and numerous times thereafter, plaintiff

made defendant Kelly fully aware of the false and criminal reporting of defendant

Morgan and others in connection with the prior April 29, 2011, false arrest of plaintiff,

the unconstitutionality and lack of probable or other cause for that arrest and for any

future such arrests and the severe emotional distress and humiliation which had been

caused plaintiff on April 29, 2011 and would be caused him by any future such false

arrests.

39.  Defendant Kelly with full knowledge of the criminality of defendant Morgan's

false reporting and of the unconstitutionality (including severe violations of the First

Amendment) and illegality of any further arrest of plaintiff based on similar future false

reporting and notwithstanding the likelihood thereof and plaintiff's legitimate and

constitutionally protected purpose, knowingly approved of and/or as a result of deliberate indifference permitted the further false arrest of plaintiff on August 31, 2011, in violation of plaintiff's First, Fourth and Fourteenth Amendment rights, as well as the illegal and unconstitutional seizure of plaintiff's cell phone and camcorder and the viewing of his photos and videos thereon, notwithstanding repeated, urgent pleas from plaintiff to defendant Kelly to prevent such violations of plaintiff's constitutional and other rights.

40.   Defendant Kelly acted and failed to act, as alleged above, in concert with defendant Michael Bloomberg (who by at least May 16, 2011, like Defendant Kelly, was on notice of the legitimate and constitutionally protected purpose of plaintiff's conduct for which plaintiff had been falsely arrested and maliciously prosecuted on April 29, 2011, and would later be unconstitutionality and illegality arrested on August 31, 2011) and defendants Vance, DelPizzo and Garnaas-Holmes; and notwithstanding defendants Kelly and Bloomberg's knowledge of plaintiff's legitimate and constitutionally protected purpose and the unconstitutionality and legal insufficiency of any criminal prosecution of plaintiff, defendants Kelly and Bloomberg acting with defendants Vance, DelPizzo and Garnaas-Holmes, all of whom had a duty to protect plaintiff from any further false arrests, knowingly approved of and permitted plaintiff's false arrest by defendant Patino to benefit defendants Morgan and Cary's highly profitable illegal business activities and the "film industry" and the revenues generated therefrom as part of a custom, policy and agreement among officials of the Bloomberg Administration, including defendants Bloomberg and Kelly, to permit the "film industry" to violate the laws with impunity and their policy and agreement in connection therewith to cover up any such violations, with the certain result of causing plaintiff severe damage and injury, including severe

emotional distress, humiliation and serious damage to plaintiff's First and Fourth Amendment rights.

41. Defendant Kelly, in concert with defendant Bloomberg, thereafter actively sought to cover-up (and thereby also adopted and ratified) the misconduct of his subordinates, including defendants Patino, Anitra, Buttacavoli, Alyse, Colon and the commander of the 10th precinct, by means of sham "investigations", including involving defendant Patino and Cokkinos, designed and intended to reach dishonest and predetermined results inconsistent with the truth to conceal the illegality and unconstitutionality of his and said defendants' conduct and to permit further violations of plaintiff's constitutional and other rights, all with the approval of defendant Michael Bloomberg and his Office for Film, Theatre and Broadcasting and defendants Vance, DelPizzo and Garnaas-Holmes to corruptly serve the interests of the "film industry", including defendants Morgan and Cary, by permitting violations of the law and arrests of those who opposed same, most particularly plaintiff.

### Fifth Cause of Action (False Arrest and Malicious Prosecution, Abuse of Process and Intentional Infliction of Emotional Distress

42. Plaintiff realleges as if fully set forth herein each and every allegation in paragraphs 1-41, inclusive, above.

43. On November 2, 2011, plaintiff, after appearing in criminal court on October 27, 2011, at which no mention of contempt had been made and after hand-delivering a nine page letter to District Attorney Vance's Office outlining defendant Morgan's perjury and the utter insufficiency and unconstitutionality of the prosecution against him, was initially arrested pursuant to a warrant issued on October 27, 2011 at the request of defendants

Vance, DelPizzo and Garnaas-Holmes by John Does 3, 4 and 5 and then at the precinct by
defendant Patino with respect to a complaint of defendant Morgan concerning conduct on
October 18, 2011, nine days earlier, alleged to have violated a protective order, only after
plaintiff refused to accept an adjournment in contemplation of dismissal with a permanent
protective order, which was the improper collateral purpose of the false arrest and
malicious complaint, which was brought by defendant Patino with the aid of defendants
Vance, DelPizzo and Garnaas-Holmes even though that order had expired prior to
October 18, 2011, as acknowledged in the criminal complaint itself, and even though the
alleged conduct had been expressly stated by the court which had issued that order that it
would not constitute a violation thereof and even though that conduct, walking plaintiff's
dog while on his cell phone, including opposite his own building and across the street
from defendant Morgan's and Cary's residence when no protected party was home or on
the block (plaintiff was only, and expressly, prohibited from walking on the sidewalk
abutting their residence on the north side of the street, as acknowledged by the assistant
district attorney at the arraignment and as expressly provided in the order), which could
not possibly have been understood by any reasonable person, including any reasonable
detective, district attorney or assistant district attorney to constitute a violation of the
already expired order even if in effect.

44. Defendant Patino, acting on behalf of defendants Bloomberg and Kelly and in
concert with defendants Vance, DelPizzo and Garnaas-Holmes and defendants Morgan
and Cary (who both acted in concert with and urged and induced plaintiff's false arrest) in
concert with defendants Shumelwitz and Belkin Burden, falsely arrested and imprisoned
plaintiff without probable or any cause and signed a complaint against plaintiff with the

substantial aid of defendants Vance, DelPizzo and Garnaas-Holmes which he and the other defendants knew had no basis whatsoever, and defendant Patio further attempted to prevent plaintiff from getting medical treatment for high blood pressure, and when he was overruled by a sergeant, called to complain on the way to Bellevue, where plaintiff's blood pressure was approximately 190, all of which conduct caused plaintiff severe emotional distress, humiliation and serious deprivation of his rights, including under the First, Fourth and Fourteenth Amendments.

45. Defendant Patio lied to plaintiff repeatedly during his arrest, including that defendant Morgan had videotaped him standing next to her to cause him severe stress without disclosing the actual charges in the complaint which he said plaintiff could learn at the arraignment and told him, as he had during the first arrest when plaintiff sought to explain why there was no probable cause for his arrest, that "you talk too much" and further that "if you don't shut up, I will delay your processing again this time".

46. All of defendants' conduct alleged in the complaint above was outrageous, malicious and in willful, wanton and reckless indifference and disregard of plaintiff and his rights and was conducted in extreme bad faith with the intention of causing plaintiff severe harm, severe emotional distress and humiliation as well as serious injury to and violations of his fundamental constitutional rights and his rights of privacy without any justification whatsoever, which it did, for the improper and unconstitutional purpose of retaliating for and deterring and punishing the exercise of plaintiff's constitutional rights and to prevent him from seeking redress for their violation and to deprive him of his liberty and due process, in violation of his rights under the First, Fourth and Fourteenth Amendments, including to due process, and by such illegal means to severely harm

plaintiff to protect the illegal "franchise" conducted by defendants Morgan and Cary,

entitling plaintiff, among other things, to substantial compensatory and punitive damages,

namely compensatory damages in an amount not less than $5,000,000 and punitive

damage in an amount not less than $15,000,000.

**WHEREFORE**, Plaintiff demands judgment against defendants, and each of them, in a

sum not less than 5,000,000 for compensatory damages and in a sum not less than

$15,000,000 for punitive damages for the wanton, willful, reckless and malicious harm

caused him, plus interest, costs, disbursements and such other and further relief as the

Court may deem just and proper.

Dated: October 30, 2012

PLAINTIFF DEMAND A TRIAL BY JURY OF ALL ISSUES SO TRIABLE

_____
Gerard A. Corsini

_____
Gerard A. Corsini
Plaintiff *Pro Se*
433 W. 21st St., Apt 9A
New York, NY 10011
212-255-3232
gcorsini@gmail.com



**Robert D. LiMandri**
Commissioner
rlimandri@buildings.nyc.gov

**Timothy Hogan**
Deputy Commissioner of
Enforcement
thogan@buildings.nyc.gov

**280 Broadway**
**Seventh Floor**
**New York, NY 10007**
www.nyc.gov/building

**+1 212 442 7158** tel
**+212 566 3865** fax

October 4, 2012

Gerard A. Corsini
433 West 21st Street
Apt 9A
New York, NY 10011

Re: 425 W. 21 Street, Manhattan

Dear Mr. Corsini,

I am writing this letter in response to your initial contact with my office regarding film shoots at the above referenced premises. In New York City, it is customary to have occasional/incidental commercial film/photography shoots inside residences. Occasional commercial film/photography shoots are allowed in residences as ancillary or incidental to the principal residence use. We have consulted with our General Counsel's Office, the Mayor's Office of Media and Entertainment, the Mayor's Office of Special Enforcement and the New York City Law Department regarding this matter.

If there is an issue on the block with illegal parking, blocked sidewalks or double parking, it should be addressed to the local police precinct as they are best suited to deal with congestion and access issues. Please contact 311 with any complaints regarding use or occupancy of the residence, and your complaints will be investigated.

Sincerely,

Timothy Hogan
Deputy Commissioner of Enforcement

build safe | live safe

*Exhibit 1*