USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _66_
DATE FILED: 6-10-2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— X

GERARD CORSINI,

                           **Plaintiff,**

           -against-

MAYOR MICHAEL R. BLOOMBERG, THE CITY OF
NEW YORK, FIRST DEPUTY MAYOR PATRICIA E.
HARRIS, POLICE COMMISSIONER RAYMOND W.
KELLY, COMMISSIONER KATHERINE L. OLIVER,
COMMISSIONER ROBERT LIMANDRI, DEPUTY
COMMISSIONER JOHN BATTISTA, DEPUTY
INSPECTOR ELISA A. COKKINOS, DETECTIVE
ERIC PATINO, DISTRICT ATTORNEY CYRUS R.
VANCE, JR., ASSISTANT DISTRICT ATTORNEY
LISA DELPIZZO, ASSISTANT DISTRICT ATTORNEY
DANIEL GARNAAS-HOLMES, DEPUTY INSPECTOR
ELISA A. COKKINOS, POLICE OFFICERS BENICIE
ALEZY, VICTOR COLON AND JESSICA
BUTTACAVOLI AND SGT. DIANA ANITRA OF THE
CITY OF NEW YORK, ELIZABETH MORGAN
AKA ELIZABETH MORGAN CARY, JONATHAN CARY,
DANIEL J. MCKAY, AARON SHMULEWITZ, BELKIN
BURDEN WENIG & GOLDMAN, LLP, ANNA WINTOUR,
CONDE NAST CORP. AND JOHN DOES 1-25 AND
JANE DOES 1-25,

                           **Defendants.**

———————————————————— X

Civil Action No.
12CV8058 (LTS)(MHD)

**FIRST AMENDED
COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY OF
ALL CLAIMS AND
ISSUES SO TRIABLE**

      Plaintiff, *pro se*, Gerard Corsini, as and for his complaint in this action, alleges on

information and belief as follows:

<u>**Parties, Jurisdiction, Venue and Summary of Claims**</u>

1. Plaintiff resides and, at all times material hereto, has resided at 433 W. 21st Street,

in the City (the "City") and County of New York, in which all of the conduct alleged

herein took place, and is suing pursuant to

   (a) 42 U.S.C. Sections 1983 and 1985 for damages against defendants, and each of

them, for having committed, and for having conspired to commit, acts under color of state

law with the intent and for the purpose of depriving plaintiff of rights secured under the

First, Fourth and Fourteenth Amendments of the Constitution of the United States,

including by

   (i) malicious false arrests, imprisonments, detentions and stops without probable

or other cause, much less reasonable suspicion

      (aa) on April 29, 2011 by defendants Buttacavoli, Alyse, Antra and John Doe 1,

when plaintiff was falsely arrested for harassment (a violation) for taking photographs of

public commercial activities while standing in front of his own building on his historic

block of twenty-two years, including of the illegal blocking of a fire hydrant by a truck

loading film equipment from defendant Morgan's and Cary's property across the street,

after defendant Alyse had committed an assault and battery upon plaintiff in front of his

building to prevent the exercise of his First Amendment rights by intentionally forcefully

grabbing his hand and video camera and attempting to wrestle it from him by means of

such offensive physical contact after placing him in fear of same, which violations were

also materially caused by a deliberate and reckless failure on the part of defendants Kelly,

Cokkinos and the City to adequately train and supervise officers and detectives of the 10th

precinct, including the above defendants, particularly with respect to the requirements,

provisions and constraints of the United States Constitution and the First and Fourth

Amendments thereof as well as the necessary elements and proof of crimes such as

stalking and harassment, most particularly in light of the fact that defendants Buttacavoli and Alyse had previously illegally detained and falsely imprisoned plaintiff on or about December 16, 2010, when he was across the street from defendants Morgan's and Cary's property during a commercial shoot there, and during that detention and imprisonment, improperly advocated on behalf of defendants Morgan and Cary that they were not violating civil zoning laws and that plaintiff was "the only one" concerned about the issue (neither of which statements was true) and, in further violation of plaintiff's First and Fourth Amendment rights, demanded that he return to his apartment or he would be arrested, after which plaintiff complained to Officer Michael Petrillo, the Community Affairs Officer of the 10th precinct who had attended a presentation by him to the neighborhood block association on November 29, 2010, when plaintiff addressed the zoning issues with photographs, including taken on December 16, 2010 (Exhibit "1 ") mentioned in the September 1, 2011, criminal complaint, with representatives of Speaker Quinn's office, Senator Tom Duane's office and Representative Richard Gottfried's office also in attendance, all of whom offered to assist to have those issues addressed and later did so, who told plaintiff that the officers' advocacy for the defendants with respect to civil matters was improper and that he would speak with them to assure that it did not happen again, which it nonetheless did on April 29, 2011, resulting in plaintiff's false arrest and his being handcuffed in his apartment and humiliated by being paraded in front of his neighbors to a police car and then transported to the 10th precinct with painfully tight cuffs which the officers refused to loosen , even long after his arrival at the precinct, causing plaintiff injury, where he was jailed notwithstanding his detailed explanations of the law, the Constitution, his legitimate purpose supported by senior public officials, his

lack of intention to annoy or harass, his utter lack of interest in defendant Morgan as opposed to her disruptive commercial activities and his offer to show the arresting defendants his photos, including those he had presented to the block association and to officer Petrillo, whom he also pleaded that they contact, all to no avail whatsoever; said arrest was also caused by the importuning, inducements and urgings of defendants Morgan, Cary and McKay with the substantial aid and assistance of defendants Shmulewitz and Belkin Burden (the "Belkin defendants") pursuant to a common plan devised by the Belkin defendants to have defendants Morgan and McKay, acting for themselves and as agents for defendant Cary, and in conspiracy with the City defendants, including defendants Patino, Garnaas-Holmes and John Does 6-10 and Jane Does 1-10 (members of the Bloomberg Administration and/or City employees) acting for defendants Bloomberg, Kelly and others, make false reports and commit perjury in connection therewith to cause false arrests and malicious prosecutions of plaintiff to deter him from exercising his First Amendment rights to advocate for and seek the enforcement of zoning laws which would prohibit the lucrative business enterprise from which all of said defendants greatly benefit;

(bb)  on June 29, 2011, by defendants Colon and John Doe 2, when said defendants illegally stopped, detained and falsely imprisoned plaintiff without cause or reasonable suspicion, after which, without asking plaintiff a single question, defendant Colon, based upon statements made to him by a total stranger to both him and to plaintiff (who was on her cell phone with either defendant Morgan or defendant Cary and was clearly told to say, and did say, as Morgan had often in public, that plaintiff was "crazy" and a "stalker" to lay a false predicate for "stalking", a crime created to deal with

delusional people who have no intent to cause fear but who do so nonetheless, something which defendants Morgan and Cary had been advised to say by their attorneys, defendants Shmulewitz and Belkin, collectively, the "Belkin defendants", as part a common plan to have plaintiff falsely arrested, particularly for the utterly inapplicable crime of stalking, by means of false reporting and complaints and perjury in support of malicious prosecutions urged by them), threatened to take plaintiff to a mental ward of a hospital if plaintiff did not cease from exercising his First Amendment right to videotape on his block, most particularly an illegally parked truck blocking a fire hydrant, which violations were also materially caused by a deliberate and reckless failure on the part of defendants Kelly, Cokkinos and the City to adequately train and supervise officers in the 10th precinct, including defendant Colon and John Doe 2, particularly in light of plaintiff's false arrest on April 29, 2011, and the issues arising from defendant Morgan's repeated false reporting which was likely to continue, and, most particularly, with respect to the requirements, provisions and constraints of the United States Constitution and the First and Fourth Amendments thereof as well as the necessary elements and proof of crimes such as stalking and harassment notwithstanding numerous urgings by plaintiff to defendants Kelly and Cokkinos, with detailed explanations of the constitutional violations and of his legitimate purpose after his traumatic April 29, 2011, false arrest, that they do so to prevent further violations of plaintiff's rights and notwithstanding assurances by defendant Cokkinos on June 21, 2011, to plaintiff that his constitutional rights would not be violated again; said false imprisonment and illegal detention were also caused by the importuning, inducements and urgings of defendants Morgan, Cary and McKay with the substantial aid and assistance of the Belkin defendants pursuant to a common plan

devised by the Belkin defendants to have defendants Morgan and McKay, acting for themselves and as agents for defendant Cary, and in conspiracy with the City defendants, including defendants Patino, Garnaas-Holmes and John Does 6-10 and Jane Does 1-10 acting for defendants Bloomberg, Kelly and others, make false reports and commit perjury in connection therewith to cause false arrests and malicious prosecutions of plaintiff to deter him from exercising his First Amendment rights to advocate for and seek the enforcement of zoning laws which would prohibit the lucrative business enterprise from which all of said defendants greatly benefit;

(cc)  on August 31, 2011, by defendant Patino, who falsely arrested plaintiff more than two months after his commanding officer, defendant Cokkinos, had met with plaintiff at his repeated urgings to her and to defendant Kelly after the trauma of his false arrest on April 29, 2011, and had assured him of her shared concern for the issues plaintiff sought to address with his photography and of her conclusion that none of the complaints against plaintiff by defendants Morgan and McKay (Morgan's employee), all of which she had reviewed and which later formed the basis of the subsequent August 31, 2011, false arrest by defendant Patino, her junior, had any substance (including a complaint with respect to a June 9, 2011, shoot by defendants Conde Nast and Anna Wintour for *Vogue*, the last date mentioned in the September 1, 2011, criminal complaint and in the complaint which superseded it (containing perjury suborned by defendant Garnaas-Holmes, for which he is not being sued), when plaintiff is only alleged to have taken photographs and video in public of that shoot, with no mention whatsoever of defendant Morgan—conduct clearly both legitimate and subject to fundamental First Amendment protections that could not conceivably have anything whatsoever to do with

"stalking", which requires, among other things, a singular focus on a "single victim" that gives rise to a reasonable fear of material physical harm, any more than it could have anything to do with "attempted murder", as defendant Cokkinos, defendant Patino's commander, made clear to plaintiff on June 21, 2011, when she told plaintiff that he could take all of the photographs he wanted so long as he did not interfere with defendant Morgan's shoots, which he never had or has, and thereafter sent plaintiff a letter dated June 24, 2011 (**Exhibit "2"**) confirming their shared concerns, her offer to address violations of parking and public property laws at various locations on the block and otherwise generally confirming plaintiff's legitimate purpose, which, like the First Amendment, precludes the utterly irrational charge of "stalking" never mentioned by any officer, including in any report, before the August 31, 2011, false arrest by defendant Patino (unlike Morgan, on the advice of the Belkin defendants who, in 2010, in an attempt to induce defendants ultimately to falsely charge plaintiff with the more serious charge of stalking (a crime) as opposed to the violation of harassment, suggested to the police that plaintiff's photography could be a precursor to stalking or privacy crimes); instead, defendant Patino, fully aware, like defendants Vance, DelPizzo and Garnaas-Holmes, of the utter insufficiency of the charges he was arresting plaintiff for and of the false reporting of defendant Morgan in connection therewith, with said DA defendants' advise and inducement (among many other things, defendant Morgan falsely reported, according to defendant Patino, that June 9, 2011, did not involve a shoot, but rather repairs to her gate, contradicting defendant Morgan's statements to defendant Garnaas-Holmes, with whom defendant Patino later spoke, and the charge in the September 1, 2011, complaint; she also made the incredible claim that plaintiff's point and shoot

camera lit up her whole 8,000 sq. foot house on December 16, 2010, preventing the shoot

from proceeding, which is not only absurd on its face but also that shoot had already

ended–*see* **Exhibit "3"**, defendant Patino's report with respect to the August 31, 2011,

arrest which is replete with misstatements and fabrications, making clear his utter bad

faith and lack of probable cause, but which establishes, among other things, that the DA

defendants were driving forces behind that false arrest and that defendant Morgan had

"leapfrogged" the 10th precinct and reached to the heights of the Bloomberg

Administration to accomplish that false arrest), slammed the door to an interview room

behind plaintiff and immediately arrested him stating that he was not interested in

anything plaintiff had told him the day before on the telephone which had made clear the

utter insufficiency of the charges as a matter of law as well as the clear violations of the

First and Fourth Amendments precluding his arrest, or in anything else, that he had not

spoken with his commanding officer or any of the officers involved in the previous

complaints made against plaintiff by Morgan and McKay that formed the basis of the

arrest and had no interest in doing so or, indeed, in any facts whatsoever (including

plaintiff's online video-petition containing the photographs for which he was being

arrested and which disproved the charge of stalking and which plaintiff had mentioned to

defendant Patino and asked him to view the day before, the support of public officials, the

knowledge of the community affairs officer of his precinct of plaintiff's legitimate

purpose or the dismissal of the April 29, 2011, harassment complaint for the very same

conduct on the court's own motion) and that the only thing he was interested in was the

fact that the District Attorney "wants to prosecute", stating that he "would never second-

guess" the District Attorney, and the fact that defendant Morgan had come in and "broke

down crying"), after which he seized plaintiff's camcorder, cell phone and audio recorder and thereafter, falsely claiming a long delay in the processing of plaintiff's fingerprints, illegally viewed all of plaintiff's video and photos, including private photos, without consent or a search warrant in violation of the Fourth Amendment and plaintiff's rights of privacy, as admitted to plaintiff at the Tombs (which devices defendants refused to return to plaintiff upon demand immediately after his release on his own recognizance, in violation of the Fourth Amendment, as no search warrant had been sought) but thereafter lied to plaintiff at the Tombs that if he disclosed his medical condition of high blood pressure, his processing would be delayed (plaintiff disclosed that condition but said that he would waive treatment), after which defendant Patino, en route to Bellevue Hospital, made a cell phone call complaining about the sergeant who required that plaintiff be taken to the hospital, where his blood pressure was abnormally and dangerously high, after which defendant Patino would not even allow plaintiff to use the bathroom in the emergency room even though it was feet away from the examination room, claiming that he wanted to get back to the Tombs as quickly as possible because he made $150,000 per year, and the trip to the hospital was a waste of his valuable time which I could have avoided; said arrest was also caused by the importuning, inducements and urgings of defendants Wintour, Conde Nast Morgan, Cary, McKay with the substantial aid and assistance of the "Belkin defendants" pursuant to a common plan devised by the Belkin defendants to have defendants Morgan and McKay, acting for themselves and as agents for defendant Cary, and in conspiracy with the City defendants, including defendants Patino, Garnaas-Holmes and John Does 6-10 and Jane Does 1-10 acting for defendants Bloomberg, Kelly and others, make false reports and commit perjury in connection

therewith to cause false arrests and malicious prosecutions of plaintiff to deter him from

exercising his First Amendment rights to advocate for and seek the enforcement of

zoning laws which would prohibit the lucrative business enterprise from which all of said

defendants greatly benefit; and

      (dd)  on November 2, 2011, by defendant Patino (who, to cause plaintiff undue

stress, refused to tell plaintiff what alleged conduct he was being arrested for and instead

lied to plaintiff that he had been caught on a hidden camera standing next to defendant

Morgan, leaving him to wonder for many hours what the defendants had "cooked up" ,

and making him believe that it was possible that defendant Patino and defendant Morgan

had doctored a photo; defendant Patino also gleefully said "you will see") and John Does

3-5, who falsely arrested plaintiff for an alleged violation on October 18, 2011, of a

protective order which had expired before that date as alleged in the criminal complaint

itself and which also could not have been violated as alleged because plaintiff was

arrested for having been on the south side of his own street when, by its express terms,

the expired order had only prohibited his being on the sidewalk on the north side of the

street directly in front of defendant Morgan's and Cary's property; when the judge at the

arraignment, as well as the Assistant District Attorney, had not only clearly stated but had

also emphasized that being on the south side of the street would not violate the order; and

when none of the protected parties covered by the expired order was home; moreover, at a

court hearing nine days after the purported violation, no mention was made by the DA's

office of any alleged violation of the order, and only when plaintiff refused to accept an

adjournment in contemplation of dismissal with a permanent protective order was he

arrested on November 2, 2011, in his home for the abusive purpose of punishing the

exercise of his Fourteenth Amendment rights and to force his acceptance of the District

Attorney's terms, in further malicious abuse of the process of the court based upon

flagrant insufficiency known to defendant Patino and to District Attorney Vance,

Assistant District Attorney DelPizzo and Assistant District Attorney Garnaas-Holmes,

collectively, the "DA defendants", who advised, urged, approved, adopted and ratified the

baseless arrest of plaintiff on behalf of defendants Bloomberg, Harris, Kelly, Oliver,

LiMandri, Battista, Morgan, Cary, Wintour and Conde Nast, among others, after plaintiff

had hand-delivered a detailed letter to defendant Vance on October 24, 2011, establishing

beyond any question the dishonesty and utter unreliability of defendant Morgan and her

attorneys, the Belkin defendants (including lies of defendant Morgan and her attorneys in

their letter of December 2, 2010, to plaintiff three days after his presentation to his block

association attended by representatives of public officials and of the 10th precinct

addressing defendants Morgan's and Cary's zoning violations, that defendant Morgan did

not use her house as a location/studio for photo shoots and threatening to sue plaintiff for

defamation, which would only be actionable if such shoots were, as they are, illegal, and

to seek his discipline, just after a ten day shoot for *West Elm* referenced in Exhibit 3 and

just before the December 16th shoot referred to in Exhibit "3" and the September 1, 2011,

complaint–*see* **Exhibit "4"**, a true and correct copy of the December 2, 2010 letter from

defendants Shmulewitz and Belkin Burden to plaintiff which forms the bedrock of lies to

which all of the deceit, false reporting, perjury, false arrests, malicious prosecutions and

First and Fourteenth Amendment violations can be traced) and the utter insufficiency as a

matter of both state and constitutional law of the "stalking" complaint filed on September

1, 2011, as further made clear in a letter hand delivered to defendant Vance's office on

October 24, 2011, with an offer of indisputable further proof of defendant Morgan's unreliability, dishonesty and material perjury (*see* **Exhibit "5"**, a true and correct copy of plaintiff's letter dated October 24, 2011 to defendant Vance), which proof was hand-delivered to defendant Vance's office shortly thereafter even though defendant Vance showed no interest in obtaining it and has not only continued to prosecute plaintiff after receiving same and after massive further perjury known to him of defendants Morgan and Patino but also has allowed defendant Garnaas-Holmes to repeat that and other perjury, thereby fully ratifying, adopting and approving all of defendant Garnaas-Holmes' actions, which were otherwise conducted as defendant's Vance's and DelPizzo's agent, in defendant Vance's name and with his full authority to act on his behalf, including with respect to the "advice" provided to defendant Patino that plaintiff was subject to arrest for stalking on August 31, 2011 (as reflected in Exhibit "3") and for criminal contempt on November 2, 2011, when no reasonable, disinterested prosecutor could have reached such conclusions but which defendant Garnaas-holmes nonetheless corruptly advised and urged on behalf of defendant Vance and defendant DelPizzo (who also refused to consider any disposition regardless of the law or the facts, including insufficiency or perjury, even after being fully aware of same, if it did not involve an unconstitutional permanent restraining order against plaintiff, further evidencing defendant DelPizzo's full approval, adoption and ratification of defendant Garnaas-Holmes' violations of plaintiff's rights on her and defendant Vance's behalf) to benefit defendants Bloomberg, Harris, Kelly, Oliver, LiMadri, Battista, Morgan, Cary, Wintour, Conde Nast and others; indeed, Exhibit 3 makes clear that defendant Morgan met with defendant Garnaas-Holmes before meeting with defendant Patino and therefore was able to "jump over" the 10th precinct

and its commander by means of "powerful friends in high places", as stated to plaintiff by detective Ficken of the 10th precinct who informed plaintiff that he had seen things in plaintiff's file he had not seen in twenty some odd years on the force, including the fact that the criminal complaint had been drafted before plaintiff's arrest on August 31, 2011, which he had never seen before, making clear the critical role of defendants Vance, DelPizzo and Garnaas-Holmes on behalf of the other defendants, including defendants Bloomberg, Harris, Kelly, Oliver, LiMandri, Battista, Morgan, Cary, Wintour and Conde Nast, among others, in the repeated violations of plaintiff's fundamental rights even **without regard** to the perjury of, and the suborning of same by defendant Garnaas-Holmes in connection with the superseding complaint as agent for defendants Vance and DelPizzo, which perjury those defendants have refused to correct even though required to do so by the Code of Professional Responsibility, and even **without regard** to the serious misconduct of said defendants in the malicious prosecution of plaintiff, including the tampering with *Brady* evidence, the unethical efforts to mislead Judge Mennin, the holding of a private sidebar with Judge Whiten to reverse a ruling in plaintiff's favor by Judge Mennin when neither plaintiff nor his attorney was present and efforts to undermine plaintiff's defense by improper contacts and communications with his prior counsel, as to which plaintiff **does not** seek to hold them accountable in this action but which conduct is strong evidence of their complicity in the false arrests of plaintiff as to which they are being held accountable; said false arrest was also caused by the importuning, inducements and urgings of defendants Wintour, Conde Nast and defendants Morgan, Cary and McKay with the substantial aid and assistance of the "Belkin defendants" pursuant to a common plan devised by the Belkin defendants to have

defendants Morgan and McKay, acting for themselves and as agents for defendant Cary, and in conspiracy with the City defendants, including defendants Patino, Garnaas-Holmes and John Does 6-10 and Jane Does 1-10 acting for defendants Bloomberg, Kelly and others, make false reports and commit perjury in connection therewith to cause false arrests and malicious prosecutions of plaintiff to deter him from exercising his First Amendment rights to advocate for and seek the enforcement of zoning laws which would prohibit the lucrative business enterprise from which all of said defendants greatly benefit; and

  (ii) malicious prosecutions and abusive judicial process and proceedings commenced on April 29, 2011, and November 2, 2011, terminated in plaintiff's favor on June 20, 2011, and March 13, 2012, respectively, the later including the issuance of unnecessary protective orders and burdensome court appearances that were intended and resulted in the serious deprivation of plaintiff's liberty and had the additional intended, abusive and malicious collateral purpose, in denial of his rights to due process, together with the false arrests and malicious prosecutions themselves, of making those deprivations, including arrests in front of plaintiff's neighbors and booking and holding in the Tombs for an extended period in horrendous conditions, among other things, in a cockroach-infested cell, so humiliating and so unbearable and the continued requirements and deprivations of court appearances so burdensome that neither plaintiff nor any person of ordinary fortitude would refuse to surrender his constitutional rights, including to due process, to the compounding abuses thereof or fail to suffer severe emotional distress but would accept a permanent restraining order, also devoid of probable or other cause, in further violation of those rights, which acts have constituted nothing less than horrific

"domestic renditions" and malicious abuses of the criminal justice system pursuant to an

unconstitutional custom, practice, usage and policy of defendants Bloomberg (the chief

and final policy-maker who has also otherwise repeatedly ratified, adopted and approved

of that policy), Kelly (the chief enforcer of the policy aided by, among others, defendant

Patino, acting as his, defendant Bloomberg's and the other City defendants' agent and

with their full authority and approval and with the repeated ratification and adoption by

them of defendant Patino's conduct pursuant to that policy, practice, custom and usage,

and by defendants Vance, DelPizzo and Garnaas-Holmes, who are sued solely for their

roles in the August 31, 2011, and November 2, 2011, false arrests of plaintiff, Vance only

in his individual capacity), Harris, LiMandri, Oliver, Battista, the City and defendants

John Does 6-10 and Jane Does 1-10, members of the Bloomberg Administration and/or

City employees who have had a material role in implementing the policy, and

Corporation Counsel, Michael A. Cardozo, the Mayor's and the City's Chief legal

counsel, which custom, practice, usage and policy has had the full force of law and the

unconstitutional and pernicious purpose and intended result of permitting persistent

violations of zoning and public safety and other laws and regulations by certain industries

and individuals favored by defendant Bloomberg and his Administration, including by

defendants Oliver, Harris, LiMandri and Battista, in particular those industries and

persons involved in or with commercial film and/or photography activities in the City

and, most particularly, at the properties owned by defendants Morgan and Cary and a

neighbor, and of effecting repeated false arrests of anyone, in particular plaintiff, who

exercises his First Amendment right to express his views about the disruptive public

commercial activities of public interest on his historic, residentially zoned block of

twenty-two years involving indisputable violations of City zoning and public property laws and regulations or who exercises his First Amendment right to document those violations through public photography and videography to petition City officials and agencies for enforcement of those laws by means of such protected communications, as guaranteed by the First Amendment (*e.g.,* plaintiff's online video-petition to the Mayor, Police Commissioner and City officials and agencies uploaded on May 14, 2011, and otherwise furnished to most of the defendants, including defendants Bloomberg, Kelly, Oliver, Battista, LiMandri, Morgan and Cary, on or about that date: www.bit.ly/441video, three and one-half months before plaintiff's August 31, 2011, false arrest on the patently irrational and unsupportable charge of "stalking"–*see* **Exhibit "6"**, the First Amendment statement accompanying that video-petition, like the statements, photos and video in that petition, viewed  by over 4000 interested persons, and **Exhibit "7"**, the criminal complaint filed on September 1, 2011, which alleges no focus on, much less any basis, reasonable or otherwise, for fear of material physical harm by defendant Morgan, the complaining witness who lives one building away from plaintiff, as required for stalking, but rather that complaint exclusively involves clear and unthreatening First Amendment speech and photography with an otherwise legitimate purpose, the existence of which itself negates any charge of "stalking") and refuses to relinquish his First Amendment rights to do so when the police so demand as advocates for defendants Morgan and Cary in furtherance of the City's policy, all for the unconstitutional purpose of retaliating for, and deterring and punishing the exercise of those First Amendment rights in order to prevent enforcement of the laws and public awareness of the violations and lack of enforcement, which custom, usage, practice and policy not only has, and has had, the full

force of law (hereinafter, the "Custom", partially evidenced by **Exhibit "8"** hereto, an

October 4, 2012, letter addressed to plaintiff from the Deputy Commissioner of

Enforcement of the Department of Buildings ("DOB"), the City agency charged with

enforcing zoning laws, distributed at a meeting at the Mayor's Office for Film, Theatre

and Broadcasting on October 5, 2012, attended by representatives of the Speaker of the

City Council, the Borough President and other public officials, as a direct and proximate

result of, but years after, plaintiff's initial and on-going efforts, with the aid of those

officials, by means of photographs, and later his video-petition and filings with the DOB,

to have those issues and violations addressed, including through presentations of

photographs evidencing the violations and disruption caused thereby for which he has

been repeatedly falsely arrested, which letter would certainly not have been provided by

the Deputy Commissioner of Enforcement to a "stalker"; intentionally avoids reference to

defendant Morgan's and Cary's property or their frequent commercial activities that are

far from "occasional/incidental" but are instead aggressively promoted on numerous

websites, including, until recently, on defendant Morgan's own website—*see*

www.betsy.com , which she revised to delete any references to location shoots or clients,

the principal focus of her site previously, and www.bit.ly/441location—and have involved

at least thirty disruptive "shoot" days per year; cites no provision or interpretation of law

or other exemption supporting its bald and intentionally vague assertions on behalf of the

Mayor, after consultation with many of the other defendants and the most senior members

of the Bloomberg Administration for the purpose of devising a benign statement of the

policy, in response to plaintiff's refusal to surrender his constitutional rights, that would

appear to "justify" the clear violations of zoning laws by defendant Bloomberg's favored

industry and the Bloomberg Administration's permitting same, namely on an "occasional/incidental" basis that does not and can not apply to defendants Morgan and Cary, a policy the Department of Buildings has also refused to clarify; and which letter certainly does not cite, and certainly does not justify, the unstated but critical, unconstitutional component of that custom, usage, practice and policy to repeatedly effect false arrests of those who draw attention to the violations of law permitted thereby by exercising their First Amendment rights, in particular plaintiff, although the letter does make abundantly clear both  plaintiff's legitimate and his constitutionally protected purpose) but also that Custom, in particular the effecting of repeated false arrests of plaintiff, has been repeatedly approved, affirmed, adopted and ratified by the City defendants, in particular defendants Bloomberg, Kelly, Harris, Oliver, Limardri and Battista, and by defendant Vance, both individually and in concert with the other defendants, who, among other things, have approved of the continuing false arrests and malicious prosecutions of plaintiff with full knowledge of the past and repeated false reporting and perjury of defendant Morgan and defendant Patino, their agent, and the repeated perjury and suborning thereof by defendant Garnaas-Holmes with the full knowledge, approval and/or adoption and ratification of, among others, defendants Vance, DelPizzo, Bloomberg, Kelly, Harris, Oliver, LiMandri and Battista as well as the utter insufficiency of the complaints against plaintiff irrespective of that perjury and false reporting; and

(b)  based upon supplemental jurisdiction, for substantial compensatory and punitive damages under New York state law for malicious false arrests, malicious prosecutions , malicious abuses of process (namely the commencement of malicious criminal

proceedings and the issuance of unnecessary and unwarranted protective orders for the improper, collateral purpose of preventing, punishing and deterring the exercise of plaintiff's constitutional rights and his right to sue for redress of their violation and of forcing him to accept deprivations of his liberty in exchange for the dismissal of those malicious prosecutions), the assault and battery upon plaintiff committed by defendant Alyse to prevent the exercise of plaintiff's First Amendment rights by intentionally putting him in fear of an offensive contact and then intentionally making such offensive physical contact with plaintiff, and for the humiliation, personal injuries and the severe emotional distress which defendants, acting with malice and in wanton and willful disregard of plaintiff, his interest and well-being, intended to inflict upon plaintiff and cause him to suffer and which he has suffered and continues to suffer as a direct and proximate result of the above conduct of defendants, including false arrests, imprisonments, detentions, handcuffing (including causing physical injury on April 29, 2011), jailing at the 10th precinct, bookings and horrific holdings in the "Tombs" and the deprivations of his liberty from the protective orders and the frequent court appearances and preparations therefor which he was required to endure, all of which conduct was engaged in by defendants in extreme bad faith and with the calculated intent to harm plaintiff and to cause him severe emotional distress, which it did.

2. The conduct of the City defendants, and each of them, alleged in paragraph 1 above was committed

(i) in conspiracy with and with the urgings, importuning and inducements of defendants Wintour, Conde Nast, Morgan, Cary and McKay (including through, but not limited to, direct dealings with defendants Patino and Garnaas-Holmes as agents for and

with the knowledge, involvement, approval, adoption and ratification of the

aforementioned City defendants, including Bloomberg, Harris, Kelly, Oliver, LiMandri,

Battista, Vance, DelPizzo, Garnaas-Holmes and defendants John Does 6-10 and Jane

Does 1-10, aided and abetted by, and with the substantial assistance and encouragement

of, defendants Schmulewitz and Belkin Burden, and in conspiracy with and at the urging,

inducement and with the involvement, approval and/or ratification of John Does 11-16

and Jane Does 11-16, persons and entities, like defendants Wintour and Conde Nast,

engaged in film and/or photography activities in the City, either directly or in connection

with their television, magazine, catalog and other businesses, which collectively induced

and caused the City defendants, acting in conspiracy with said other defendants, including

through defendant Patino as agent for the City defendants, to effect the false arrest and

malicious prosecution of plaintiff on April 29, 2011 (not including defendants Wintour

and Conde Nast), the false arrest of plaintiff on August 31, 2011, and the false arrest and

malicious prosecution of plaintiff on November 2, 2011, with the advice, urging,

knowledge, approval and/or ratification of defendants Bloomberg, Harris, Kelly, Oliver,

LiMandri, Battista, John Does 6-10 and Jane Does 1-10 and the DA defendants (as to the

August 31, 2011 and November 2, 2011 arrests only).

   3. Defendants Bloomberg, Harris, Kelly, LiMardri, Oliver, Battista, Vance, DelPizzo,

Garnaas-Holmes, Cokkinos, Patino and John Does 1-10 and Jane Does 1-10, although

acting within the course and scope of their employment and their official capacities, are

all sued herein under Sections 1983 and 1985 in their individual and personal capacities

and all acted, as alleged above, under color of state law, with the intent and for the

purpose of depriving plaintiff of rights secured under the First, Fourth and Fourteenth

Amendments of the Constitution of the United States.

4. This Court has jurisdiction pursuant to 28 U.S.C. Sections 1331, 1343 (3) and (4) and 1367.

5. Venue in this judicial district is appropriate under 28 U.S.C. Sections 1391(b) in that all of the events that gave rise to the claims herein occurred in this district.

6. Defendant Elizabeth Morgan at all times alleged herein and material hereto has been an owner with her husband defendant Jonathan Cary of the residential property at 441 West 21st Street in the City, County and State of New York (the "Property" or the "Residence") which is located one building from plaintiff's residence of twenty-one years and which, although zoned for exclusive residential use, was renovated to serve as, and has been extensively promoted, used and licensed by defendants Morgan and Cary as a commercial film and photography studio to the great disruption of the neighborhood, in violation of applicable zoning regulations, in addition to the Property's use as a part-time residence for defendants Morgan and Cary and their family.

7. Defendant Morgan all times alleged herein and material hereto acted both for herself and as an agent and in concert and conspiracy with defendant Jonathan Cary and at his direction and/or for his benefit and with his agreement, encouragement, inducement, substantial assistance, aid, abetment, approval, consent and ratification.

8. Defendant McKay at all times alleged herein and material hereto was an employee of defendants Morgan and Cary acting within the course and scope of his employment and/or a person acting at the direction of and in concert with said defendants, under their control, as their agent, for their benefit and with their inducement, agreement, approval, consent and ratification, including in supervising, coordinating and otherwise assisting

with commercial film and photography shoots illegally conducted at their residence, and was deliberately retained by defendants Morgan and Cary even though unfit, including after his vicious stabbing of a cab driver in front of plaintiff's residence over a parking dispute prior to the events alleged herein.

9.  Defendant Anna Wintour is an executive of defendant Conde Nast Corp., whose headquarters are in New York City and which has contracted through its divisions with defendant Morgan, a former employee, and defendant Cary, to conduct photo shoots at their residence, including on June 9-11, 2011, after which disruptive shoot plaintiff called defendant Wintour (as to which defendant Morgan complained), in particular about vile defamation of defendant McKay on behalf of defendants Morgan and Cary that was repeated by employees or contractors of Conde Nast, and was referred by defendant Wintour's office to a person who said he had no authority whatsoever to address those issues and gave plaintiff the names of those whom he should contact, which he did but from whom plaintiff never received any return communications; two and one-half months later, after defendant Morgan had complained that plaintiff was interfering with her business relations with defendant Wintour and Conde Nast and after defendant Wintour intentionally "dead-ended" plaintiff's inquiries, plaintiff was arrested on August 31, 2011, as a result of contacts with the Bloomberg Administration and the District Attorney's office by "powerful people" with friends "in high places".

10.  The block on which defendants Morgan's and Cary's residence (as well as plaintiff's residence) is located is zoned solely for residential use as reflected on the certificate of occupancy issued for the Property, and defendants Morgan's and Cary's use of their residence since at least 2009 for highly disruptive commercial film and

photography shoots has been in violation of New York City laws, rules and/or regulations applicable to the zoning for, and permitted use of, the Property and the certificate of occupancy relating thereto.

11. Defendants Aaron Shmulewitz and Belkin Burden Wenig & Goldman, LLP ("Belkin Burden"), at all times material hereto have purported to be experts in real estate law, including zoning law, and notwithstanding—indeed because of—the illegality of Morgan's and Cary's extensive and highly promoted business use of their residence for commercial film and photography shoots known to and assisted by them, designed a common plan with and at the request and for the benefit of defendants Morgan and Cary to cover up violations, and to prevent enforcement of, the applicable zoning laws and regulations and substantially aided, abetted, encouraged and assisted defendants Morgan and Cary in carrying out that plan which involved, among other things, threats by defendants Shmulewitz and Belkin Burden of criminal and disciplinary action for photographing public commercial activities that they lied were not taking place and did not involve film or photography shoots; repeated lies of said defendants to cover up those shoots and those illegal activities; and advising, aiding and abetting and directing Morgan's and Cary's urging, causing, inducing and conspiring with defendants Patino, Kelly, Bloomberg, Vance, DelPizzo, Garnaas-Holmes and John Does 2-10 and Jane Does 1-10, for whom defendant Patino acted as agent with their full authority, knowledge, approval and ratification, to effect false arrests and commence malicious prosecutions of plaintiff based upon false reports by Morgan and/or McKay and perjury of defendants Patino and Morgan known to or willfully, wantonly and intentionally disregarded by defendants Bloomberg, Harris, Kelly, Vance, DelPizzo and Garnass-Holmes even though

defendants Bloomberg, Harris and Kelly had a duty to plaintiff to prevent the violations of plaintiff's constitutional and other rights but directed, approved, authorized and encouraged defendant Patino as their agent, and later adopted, approved and ratified his unconstitutional conduct, to falsely arrest plaintiff and to file malicious criminal complaints against him, as alleged above, with their full authority as their agent and with their full knowledge of the illegality thereof in furtherance of the Custom and in conspiracy with defendants Morgan and Cary who urged, induced and caused such violations (with the substantial assistance and encouragement of the Belkin defendants in furtherance of their common plan).

12. Defendants Shmulewitz and Belkin at all times material hereto acted in concert with and as the agents of defendants Morgan and Cary and aided, abetted and conspired with and otherwise provided substantial assistance and encouragement to defendants Morgan and Cary in pursuance of said common plan of defendants Shmulewitz' and Belkin's principal design to commit the criminal and other unlawful conduct alleged herein with the full knowledge of its illegality and with the intention of furthering same to harm plaintiff, including, without limitation, by means of knowingly false statements and unfounded, improper and unlawful threats of litigation and disciplinary proceedings and of abusive and malicious criminal prosecution, all for the improper purpose of deterring the exercise of plaintiff's First Amendment and other rights to document by photography public commercial activities and traffic, safety and other violations involving illegal commercial film and photography shoots at defendants Morgan's and Cary's Property, so as to prevent plaintiff from petitioning government agencies to address same. (See

Exhibit "4").

**First Cause of Action**

13.  Plaintiff realleges as if fully set forth herein each and every allegation in
paragraphs 1-12, inclusive, above

14.  Defendants Morgan, Cary and McKay, and, on information and belief, the Belkin
defendants, have known of plaintiff's opposition to and complaints to City officials
concerning commercial activities at 441 since 2009, including with respect to a highly
disruptive and illegal shoot in August, 2009 and another by Saturday Night Live  ("SNL")
at 441 on April 15, 2010, with blazing lights into the early morning hours and heavy
equipment on the sidewalk without any permit whatsoever, as to which defendant Morgan
claimed through defendant McKay, who approached plaintiff on the street the next day to
tell me that NBC had lied "to us" about having a permit, which NBC later said was
completely false and that defendant Morgan or her representative had been informed of
the lack of a permit and assured them that "the neighbors would not mind". (Plaintiff
arranged for NBC to make a $2500 contribution to the block association to compensate
for the disruption, further evidencing my "legitimate purpose", and Saturday Night Live
apologized profusely for that disruption and, after viewing plaintiff's video, www.
bit.ly/441video, informed plaintiff that it was shocking and that they would also be very
upset if they lived on the block).

15.  The complicity of the City, the Police Department and defendants Bloomberg,
Cokkinos and Kelly in these violations was first apparent to plaintiff when he called the
10th precinct to see if there was a permit for the shoot on file for the SNL shoot and was
told that there was, but when he asked to come to the precinct to see it, was told by the

same person that, in fact, there really was no permit on file, namely that he had lied to plaintiff, which he did not dispute.

16.  When plaintiff then asked that a patrol car go to 441 to ascertain if there was a permit, plaintiff was flatly told that the police department would never shut down a shoot even when there was no permit and the use of public property in violation of the law, without approval of the Mayor's Office, and the officer therefore refused to send out a patrol car and made no attempt to get a hold of anyone in the Mayor's Office.   He then put plaintiff on "hold" for any eternity, and when he called him back, after identifying himself at the request of the operator, he was put on hold again only to be told, quite unbelievably, that the officer had left.   When he called defendant Kelly's office that night to get action, nothing was done, and no one called him back the next day.   This pattern has occurred time and time again with respect to violations of public property or parking laws by the "film industry", including on the afternoon of June 21, 2011, just after plaintiff had met with defendant Cokkinos and had received her assurances that such issues would be addressed, but when plaintiff called the precinct to report the illegal use of the sidewalk without a permit to store large amounts of photo equipment, and even mentioned the meeting with defendant Cokkinos, the officer refused to send a police car, and when I called back, as in the past, he sent me to "dead" extension.

17.  Similarly, complaints to the Mayor's office, as with a shoot in August, 2009, were met with intentional misstatements and evasions designed to avoid enforcing the public property laws that had been violated by NBC and later by further misstatements and inaction which resulted in no punishment or fine whatsoever to NBC even though severe action had been promised by the Mayor's Office if what had been complained about was

true, which the Mayor's Office acknowledged was the case as well as the serious nature

of the violations.  The Mayor's Office later engaged in extreme bad faith in failing to

comply with and imposing conditions utterly inconsistent with FOIL and otherwise

seeking to evade production of documents with respect  to permits for shoots on

plaintiff's block, including by blatant misrepresentations of its counsel and Deputy

Commissioner, defendant Battista with the knowledge and approval and the direction of

defendant Oliver.

18.  On April 29, 2011, defendants Morgan, Cary and McKay, aided and abetted by

defendants Shmulewitz and Belkin, urged, induced caused and conspired with defendants

Buttacavoli, Alyse, Anitra and John Doe 1, a fellow officer, to commit assaults and

batteries upon plaintiff for exercising his First Amendment right to take photographs in

public of public commercial activities and of public traffic and safety violations on his

block and to illegally detain, falsely imprison and falsely arrest plaintiff without

reasonable, probable or other cause in order to deter and punish the exercise of those

rights and to prevent exposure of defendants Morgan's and Cary's illegal conduct.

19.  Defendants Buttacavoli, Alyse and Anitra (as well as defendant Colon and

detective Patino as alleged herein) had all been on notice of and willfully and recklessly

disregarded the illegality, unconstitutionality and impropriety of their conduct, were

inadequately trained and supervised, including by defendants Cokkinos and Kelly as part

of policy and practice of deliberate indifference to plaintiff's and other's constitutional

rights and the need for training and supervision with respect thereto and improperly

sought to use their authority (including pursuant to an unlawful agreement/conspiracy

with defendants Morgan and Cary prior to April 29, 2011, after being warned of the

impropriety of their conduct by the community affairs officer) to benefit defendants

Morgan and Cary and their illegal activities in knowing violation and/or reckless

disregard of and indifference to plaintiff's constitutional and other rights and the laws of

the State of New York.

20.  As a direct and proximate result of the above, on April 29, 2011, plaintiff was

improperly detained by defendants Buttacavoli and Alyse, was intentionally physically

and offensively grabbed, assaulted and battered by defendant Alyse and prevented thereby

and otherwise from exercising his First Amendment right to photograph in public and

was thereafter falsely arrested and handcuffed in his apartment, taken in front of his

neighbors to a police car and jailed by defendants Buttacavoli, Alyse, Anitra and John

Doe 1 for having exercised those rights, causing him humiliation, severe emotional

distress, physical injury and deprivation of his civil and constitutional rights, including

under the First and Fourth Amendments.

21.  On April 29, 2011, as a direct, proximate and intended cause of the above

malicious conduct of defendants Morgan, Cary and McKay, aided and abetted by

defendants Shmulewitz and Belkin, defendants Buttacavoli, Alyse, Anitra and John Doe 1

maliciously commenced a criminal proceeding without any basis or merit by service of a

complaint/summons, which proceeding was maliciously intended by said defendants and

by defendants Morgan, Cary and McKay, aided and abetted by defendants Shmulewitz

and Belkin, to serve the collateral and improper purpose of preventing exposure of

defendants Morgan's and Cary's illegal activities by deterring and punishing the exercise

of plaintiff's First Amendment and other constitutional rights and by causing

plaintiff severe emotional distress, humiliation and other damage, which it did.  That

complaint was dismissed by the court on June 20, 2011, on its own motion.

## Second Cause of Action

22.  Plaintiff realleges as if fully set forth herein each and every allegation in paragraphs 1-21, inclusive, above.

23.  After plaintiff's first false arrest on April 29, 2011, and after repeated, urgent written pleas to defendant Kelly and defendant Cokkinos, the commander of the 10th precinct, that she meet with plaintiff to avoid any future false arrests (plaintiff also made repeated urgent pleas to defendant Kelly to meet with a member of his staff which were ignored, although a number of people called plaintiff as part of a cover-up), the commander of the 10th precinct, defendant Cokkinos, did meet with plaintiff on June 21, 2011, and, amazingly, indicated that she could not understand why plaintiff would be concerned that he had been lied to about the permit or the refusal to enforce the public property laws that had been egregiously violated, making clear, as do the corrupt arrests and prosecutions of plaintiff and other evidence in his cases, the policy and custom of the City, including of Mayor Bloomberg and Commissioner Kelly, to permit the "film" industry to violate the laws and defendants Kelly's, Bloomberg's, Patino's, Vance's, DelPizzo's, Garnaas-Holmes' and the City's willingness as part of that policy to go to any lengths necessary, including plaintiff's multiple unconstitutional false arrests and malicious prosecutions, to prevent exposure of that policy, custom and usage and of the violations of law by the "film industry" permitted and covered up thereby.  Attached hereto as Exhibit "8" is a letter addressed to plaintiff by the Deputy Commissioner of the Department of Buildings in charge of enforcement and delivered to those in attendance at a meeting at the Mayor's Office attended by Community Board 4 members,

representatives of Speaker Quinn and Borough President Stringer's offices and others and which references a "custom" that not only has no foundation in law but also is antithetical to applicable law as to which no explanation is given and as to which the Department of Buildings therefore, at the prompting of the Mayor's Office, refused to send a representative to explain said "custom" or what was meant by "occasional", which , in any event, as the writer and everyone else knows, can by no reasonable means apply to the highly disruptive and sustained commercial activities of defendants Morgan and Cary which it is nonetheless offered to support in consultation with the Mayor's Office and the Mayor's Law Department, among others..

24.  Defendant Cokkinos also amazingly said that plaintiff's having been handcuffed in his apartment by three officers and a sergeant (after he had repeatedly explained to them the legitimate and First Amendment purpose of his photography; his lack of intent to annoy or harass or any interest in defendant Morgan; his presentation to the local block association of his photographs; the support of local officials; the zoning regulation; and the law of harassment requiring, among other things, the lack of a legitimate purpose and an intent to annoy or alarm and also offered to show them all of the photographs he had taken and urged them to contact the community affairs officer who was fully familiar with his legitimate purpose, which they listened to but utterly disregarded—after plaintiff's explanation and urgings, defendant Buttacavoli, Morgan's "chum", merely shook her head at the Sergeant, leading to his arrest); and plaintiff's then being taken in front of his neighbors downstairs and transported to and jailed in the 10th precinct for hours and given a complaint and summons did not constitute an arrest—something she emphatically repeated over my incredulous dissent, including my reference to *Terry v.*

*Ohio.*

25. Defendant Cokkinos further stated that notwithstanding a detailed letter from plaintiff outlining questions concerning his arrest and extreme bias of the 10th precinct in favor of defendant Morgan and in violation of his constitutional rights, she had not interviewed the officers and sergeant involved, had not read any of his numerous e-mails to her, about which she claimed to know nothing, and could not answer any of his questions, including those in his letter, other than to say that she had reviewed all of the complaints against him (which she said often referred to me as a suspicious person, even though Morgan knew exactly who plaintiff was and his purpose, clearly to create a false sense of danger and urgency) and reports before that date, June 21, 2011 (including on June 9 when an officer lied to plaintiff about defendant Morgan's not having complained about harassment, allowed plaintiff to videotape public commercial activities, saying that he was "fully aware of the situation", and then filed a report, and Morgan a complaint, at the urging of defendant Morgan even though nothing other than public photography protected by the First Amendment was involved and had been permitted by the officer), and that **"you can take all the photographs you want"** but that he should not obstruct the shoots, which he never had or did.  Shortly, thereafter, she added as an aside/addendum: "and don't harass anyone"—not, don't "stalk" anyone—the charge of the September 1, 2011 complaint after the complaint for harassment had been dismissed), by which plaintiff understood her to mean not to get in anyone's face", which the community affairs officers had said on January 10, 2011, when he told plaintiff and defendant Morgan that he had a right to take pictures as long as he did not get into anyone's face,

which he had never done.

26.   Indeed, Detective Ficken of the 10th precinct later informed plaintiff (after

coming to his apartment with two other detectives unannounced at 11:00 p.m. on a Friday

night to investigate further false contempt charges of defendant Morgan made in April,

2012, involving, among other things, alleged conduct nearly a month  earlier on March

13, 2012 (the very day the first contempt case—one of the subjects of this complaint— and

the protective order therein were dismissed, when defendant Morgan was stalking

plaintiff with a video camera while he was walking his dog), for which he would not

arrest plaintiff (although he made clear further false reporting of Morgan concerning her

children, namely that she had claimed that plaintiff had taken pictures of her and her

children which was utterly false), but for which defendant Patino ultimately did arrest

plaintiff after he had been "investigated" for misconduct in his prior arrest(s) of plaintiff,

for the third time, on false and insufficient grounds known to him, defendants Kelly,

Vance, DelPizzo and Garnaas-Holmes, and as to which he also committed perjury

involving alleged photography of Morgan's house, not of her children, allegations which

could nonetheless not violate the protective order in effect), that someone "very high up"

in the city is behind all of this [the multiple false arrests and prosecutions] because I have

seen things in your file which I have not seen in my [20?] years" either on the force or as

a detective, including the fact that the protective order in the stalking case had been

drawn up before the criminal complaint, something he said was highly unusual and that

he had never seen before and a clear indication that there were powerful people behind

the complainant, defendant Morgan.

27.  Notwithstanding plaintiff's urgent pleas to defendants Kelly and Cokkinos that his

constitutional rights not be further violated, the statements and assurances of defendant

Cokkinos given plaintiff on June 21, 2011, and a letter from her dated June 24, 2011,

thanking plaintiff for meeting with her, expressing mutual concern about the issues

raised, including film activity both at Morgan's and Cary's property and elsewhere on the

block and the disruption and violations resulting therefrom, and her offering to work to

address those violations of mutual concern, as a direct and proximate result of a policy of

reckless indifference to plaintiff's and others constitutional rights as well as the need for

training and supervision of those under her and defendant Kelly's commands with respect

thereto, on  June 29, 2011, defendants Morgan and Cary, aided and abetted by defendants

Shmulewitz, Belkin and McKay, acting pursuant to the above-mentioned plan, directed,

induced and caused defendant Jane Doe 1 to make false reports about and to charge at

plaintiff in the street when he was videotaping from a distance an unattended truck

illegally blocking the fire hydrant, screaming to create the false impression that he was

doing or had done something both wrong and criminal and to slander him by stating that

he was a "perv", a "stalker", "interested in young girls", "a creepy porno mate" and that

he was "crazy", which was heard by passersby and neighbors.

28.   As a result of defendant Jane Doe 1's false reporting, defendant Colon arrived on

the block with John Doe 2 and improperly detained and seized the plaintiff, and after Jane

Doe 1 had made the same statements to defendant officer Colon on behalf of the above-

mentioned defendants, defendant Colon, without asking plaintiff a single question and

being unwilling to listen to plaintiff or his explanations, including that he had met

recently with his commanding officer and her assessment and comments, and based

solely on the defamation that defendant Jane Doe 1, a complete stranger to plaintiff and

the neighborhood, had published to defendant Colon at the request of defendants Morgan,

Cary and McKay  pursuant to the above-mentioned plan devised and aided and abetted by

Shmulewitz and Belkin, having violated plaintiff's Fourth Amendment rights, violated

his First and Fourteenth Amendment rights  by demanding that plaintiff stop videotaping

in public, including a truck illegally parked for hours, and leave, threatening him that if he

did not do so plaintiff would be taken to a mental ward of a hospital.

29.   Said outrageous conduct, not only violated plaintiff's First, Fourth and Fourteenth

Amendment rights but also was intended to and did cause plaintiff severe emotional

distress.

30.   Defendant Colon's and John Doe 2's violations of plaintiff constitutional rights

and their intentional infliction of severe emotional distress were a result not only of

inadequate training of officer Colon and a failure of the command of the 10th precinct, the

Police Department and defendant Kelly to inform officers who might respond about the

issues presented by defendant Morgan's repeated criminal false reporting and false

complaints known to them, including as a result of a meeting between the plaintiff and

the commander of the 10th precinct on June 21, 2011, and as a result of numerous e-mails

to defendant Kelly during and since May, 2011, which  made defendant Kelly fully aware

of said false reporting, plaintiff's legitimate and constitutionally protected purpose and

the lack of any criminal conduct in connection therewith, but also a policy of corruption

within the Police Department and more generally the Bloomberg Administration and its

Mayor's Office of Film, Theatre and Broadcasting, substantially aided and assisted by

defendant Kelly in concert with defendant Bloomberg, to benefit the "film industry",

including defendants Morgan and Cary, at any cost, including the false arrests and

malicious prosecutions of plaintiff and those like plaintiff who exercise or have exercised

their First Amendment rights to expose illegal activities of industry members.

31.  Defendant Kelly was fully aware of the matters raised at the meeting and the

rights of plaintiff affirmed thereat but nonetheless willfully and knowingly failed to

prevent the violation of plaintiff's constitutional and other rights by defendant Colon as

well as the humiliation and severe emotional distress caused thereby for the corrupt

purpose of benefiting defendants Morgan and Cary and the "film industry" in concert

with defendant Bloomberg, who shared that objective and the illegal means alleged herein

to accomplish it.

32.  On or about May 27, 2011, and numerous times thereafter, plaintiff made

defendant Kelly fully aware of the false and criminal reporting of defendant Morgan and

others in connection with the prior April 29, 2011, false arrest of plaintiff, the

unconstitutionality and lack of probable or other cause for that arrest and for any future

such arrests/detentions and the severe emotional distress and humiliation which had been

caused plaintiff on April 29, 2011 and would be caused him by any future such false

detentions/arrests.

33.  Defendants Kelly and Cokkinos with full knowledge of the criminality of

defendant Morgan's false reporting and of the unconstitutionality (including severe

violations of the First and Fourth Amendments) and illegality of any further

detentions/arrests of plaintiff based on similar future false reporting, and notwithstanding

the likelihood thereof and plaintiff's legitimate and constitutionally protected purpose,

knowingly approved of and/or permitted through a policy of reckless indifference the

further violation of plaintiff's First, Fourth and Fourteenth Amendment rights by

defendant Colon and subsequently by detective Patino notwithstanding repeated, urgent

pleas from plaintiff to defendants Kelly and Cokkinos to prevent such violations of

plaintiff's constitutional and other rights which defendants Kelly and Cokkinos had a

duty to prevent, particularly after plaintiff's meeting with defendant Cokkinos, the

commander of the 10th precinct, on June 21, 2011, when he had been assured that those

rights would be protected.

34.   As a result of said conduct of defendants Colon, John Doe 2, The City of New

York, Bloomberg, Kelly, Morgan, Cary, Shmulewitz, Belkin and McKay, plaintiff was

unlawfully detained/imprisoned, his constitutional and other rights were seriously

violated, including his First, Fourth and Fourteenth Amendment rights, and plaintiff,

among other things, suffered humiliation and severe emotional distress as had been

intended by defendants.

**Third Cause of Action**

35.   Plaintiff realleges as if fully set forth herein each and every allegation in

paragraphs 1-34, inclusive, above.

36.   On August 31, 2011,  defendants Wintour, Conde Nast and Morgan and Cary,

aided and abetted by and in conspiracy with defendants Shmulewitz, Belkin and McKay

and in furtherance of the above-mentioned common plan urged, induced, caused and

conspired with defendant Patino and defendants Vance, DelPizzo and Garnaas-Holmes

acting on behalf of themselves and defendants The City of New York, Michael

Bloomberg and Raymond Kelly in furtherance of the custom, practice and policy which

had the force of law mentioned above, with their full knowledge and approval and in

knowing and willful breach and violation of plaintiff's constitutional rights, to create

false and insufficient criminal charges which would serve as a basis for plaintiff's false

arrest and malicious prosecution pursuant to a complaint signed by detective Patino and

based thereon to have plaintiff falsely arrested and imprisoned without reasonable,

probable or other cause for having exercised his First Amendment right to take

photographs in public of public commercial activities and public traffic and safety

violations on his block, in order to deter, punish and retaliate for the exercise of those

rights and thereby prevent exposure of defendants Morgan's and Cary's illegal activities

and to retaliate against plaintiff both for the exercise of his constitutional rights and to

deter his redress of their violation and cause him humiliation, severe emotional distress,

physical injury and deprivation of his civil and constitutional rights, including under the

First, Fourth and Fourteenth Amendments, which said defendants did maliciously and

without cause.

37. Defendant Patino (as well as defendant Kelly) was fully aware of the

unconstitutionality of his arrest of plaintiff, of the legitimate and constitutionally

protected purpose of plaintiff's photography (including as used in an internet video

petition to government officials, many of whom supported his efforts) and his conduct; of

Cokkinos' opinion after review of all of the complaints against plaintiff that plaintiff's

conduct had not violated and would not violate any laws and was constitutionally

protected and her support of plaintiff's concerns as set forth in her letter of June 24, 2011;

of the utter insufficiency and falsity of the complaint corruptly filed by him on behalf of

defendant Morgan; and yet he nonetheless willfully refused to listen to, ask a single

question of plaintiff or consider anything said by plaintiff concerning same in willful and

wanton disregard of the illegality of his conduct, with the full knowledge and approval of

defendants Kelly, Bloomberg, Vance, DelPizzo and Garnaas-Holmes for the corrupt
purpose of benefiting defendants Morgan and Cary and the "film industry" of which they
were a part.

38.  On August 31, 2011, defendant Patino acting on behalf of himself and defendants
The City of New York, Michael Bloomberg, Raymond Kelly, Oliver, Limandri, Battista
and Vance, DelPizzo and Garnaas-Holmes induced and aided and abetted by and in
concert with defendants Wintour, Conde Nast and Morgan, Cary and McKay, themselves
aided and abetted by defendants Shmulewitz and Belkin, further violated plaintiff's
constitutional rights, including under the First, Fourth and Fourteenth Amendments, as
well as his rights of privacy (a) by illegally seizing plaintiff's cell phone and camcorder as
evidence without a search warrant or probable cause which defendant Patino and
defendant The City of New York and its Police Department thereafter refused to return;
(b) by viewing without any request to or consent of plaintiff and without a search warrant
or probable or other cause or justification all of the extensive photos and video on
plaintiff's cell phone and camcorder, including very personal and private photos and (c )
by lying to plaintiff in reckless disregard of his right to medical treatment that any request
for same would delay his processing and that he should lie to the medical officer to avoid
same, which plaintiff did, putting himself at risk, only to find out when in his cell that a
posted sign specifically stated that any request for medical treatment would not delay
processing.

39.  Defendant Patino had been on notice and knew of the illegality and impropriety of
his conduct and of the utter lack of grounds for and unconstitutionality of said arrest and
conduct; willfully ignored same to corruptly benefit defendants Morgan and Cary and

their illegal commercial activities with the full approval of defendants Kelly and Bloomberg and with the aid of defendants Vance, DelPizzo and Garnaas-Holmes; was inadequately trained and supervised and improperly and corruptly sought to use his authority to benefit defendants Morgan and Cary and their illegal activities in knowing, wanton and willful violation and/or willful and reckless disregard of and indifference to plaintiff's constitutional and other rights and in connection therewith intended by such false arrest and such conduct to cause and did cause plaintiff severe emotional stress and humiliation in addition to injury to his constitutional rights, including under the First, Fourth and Fourteenth Amendments.

40  On or about May 27, 2011 (long before the illegal and unconstitutional arrest of plaintiff by defendant Patino and defendant Patino's illegal and unconstitutional viewing of plaintiff's photos and video and his illegal seizure of plaintiff's cell phone and camcorder as evidence on August 31, 2011) and numerous times thereafter, plaintiff made defendant Kelly fully aware of the false and criminal reporting of defendant Morgan and others in connection with the prior April 29, 2011, false arrest of plaintiff, the unconstitutionality and lack of probable or other cause for that arrest and for any future such arrests and the severe emotional distress and humiliation which had been caused plaintiff on April 29, 2011 and would be caused him by any future such false arrests.

41.  Defendant Kelly with full knowledge of the criminality of defendant Morgan's false reporting and of the unconstitutionality (including severe violations of the First Amendment) and illegality of any further arrest of plaintiff based on similar future false reporting and notwithstanding the likelihood thereof and plaintiff's legitimate and

constitutionally protected purpose, knowingly approved of and/or as a result of deliberate indifference permitted the further false arrest of plaintiff on August 31, 2011, in violation of plaintiff's First, Fourth and Fourteenth Amendment rights, as well as the illegal and unconstitutional seizure of plaintiff's cell phone and camcorder and the viewing of his photos and videos thereon, notwithstanding repeated, urgent pleas from plaintiff to defendant Kelly to prevent such violations of plaintiff's constitutional and other rights.

42.   Defendant Kelly acted and failed to act, as alleged above, in concert with defendant Michael Bloomberg (who by at least May 16, 2011, like Defendant Kelly, was on notice of the legitimate and constitutionally protected purpose of plaintiff's conduct for which plaintiff had been falsely arrested and maliciously prosecuted on April 29, 2011, and would later be unconstitutionality and illegality arrested on August 31, 2011) and defendants Vance, DelPizzo and Garnaas-Holmes; and notwithstanding defendants Kelly and Bloomberg's knowledge of plaintiff's legitimate and constitutionally protected purpose and the unconstitutionality and legal insufficiency of any criminal prosecution of plaintiff, defendants Kelly and Bloomberg acting with defendants Vance, DelPizzo and Garnaas-Holmes, all of whom had a duty to protect plaintiff from any further false arrests, knowingly approved of and permitted plaintiff's false arrest by defendant Patino to benefit defendants Morgan and Cary's highly profitable illegal business activities and the "film industry" and the revenues generated therefrom as part of a custom, policy and agreement among officials of the Bloomberg Administration, including defendants Bloomberg and Kelly, to permit the "film industry" to violate the laws with impunity and their policy and agreement in connection therewith to cover up any such violations, with the certain result of causing plaintiff severe damage and injury, including severe

emotional distress, humiliation and serious damage to plaintiff's First and Fourth
Amendment rights.

43.  Defendant Kelly, in concert with defendant Bloomberg, thereafter actively sought
to cover-up (and thereby also adopted and ratified) the misconduct of his subordinates,
including defendants Patino, Anitra, Buttacavoli, Alyse, Colon and the commander of the
10th precinct, by means of sham "investigations", including involving defendant Patino
and Cokkinos, designed and intended to reach dishonest and predetermined results
inconsistent with the truth to conceal the illegality and unconstitutionality of his and said
defendants' conduct and to permit further violations of plaintiff's constitutional and other
rights, all with the approval of defendant Michael Bloomberg and his Office for Film,
Theatre and Broadcasting and defendants Vance, DelPizzo and Garnaas-Holmes to
corruptly serve the interests of the "film industry", including defendants Morgan and
Cary, by permitting violations of the law and arrests of those who  opposed same, most
particularly plaintiff.

44.  As a result of said defendants' conduct,  plaintiff's constitutional rights and rights
under the Constitution and laws of the State of New York were further seriously violated,
including his rights under the First, Fourth and Fourteenth Amendments, as well as his
rights of privacy, and plaintiff, among other things, suffered humiliation and continuing
severe emotional distress, as had been intended by defendants.

### Fifth Cause of Action (False Arrest and Malicious Prosecution, Abuse of Process and Intentional Infliction of Emotional Distress

45. Plaintiff realleges as if fully set forth herein each and every allegation in

paragraphs 1-44, inclusive, above.

46.  On November 2, 2011, plaintiff, after appearing in criminal court on October 27,

2011, at which no mention of contempt had been made and after hand-delivering a nine

page letter to District Attorney Vance's Office outlining defendant Morgan's perjury and

the utter insufficiency and unconstitutionality of the prosecution against him, was initially

arrested allegedly pursuant to a warrant issued on October 27, 2011 at the request of

defendants Vance, DelPizzo and Garnaas-Holmes by John Does 3, 4 and 5 and then at the

precinct by defendant Patino with respect to a complaint of defendant Morgan concerning

conduct on October 18, 2011, nine days earlier, alleged to have violated a protective

order, only after plaintiff refused to accept an adjournment in contemplation of dismissal

with a permanent protective order, which was the improper collateral purpose of the false

arrest and malicious complaint, which was brought by defendant Patino with the aid of

defendants Vance, DelPizzo and Garnaas-Holmes even though that order had expired

prior to October 18, 2011, as acknowledged in the criminal complaint itself, and even

though the alleged conduct had been expressly stated by the court which had issued that

order that it would not constitute a violation thereof and even though that conduct,

walking plaintiff's dog while on his cell phone, including opposite his own building and

across the street from defendant Morgan's and Cary's residence when no protected party

was home or on the block (plaintiff was only, and expressly, prohibited from walking on

the sidewalk abutting their residence on the north side of the street, as acknowledged by

the assistant district attorney at the arraignment and as expressly provided in the order),

which could not possibly have been understood by any reasonable person, including any

reasonable detective, district attorney or assistant district attorney to constitute a violation

of the already expired order even if in effect.

47.  Defendant Patino, acting on behalf of defendants Bloomberg and Kelly and in concert with defendants Vance, DelPizzo and Garnaas-Holmes and defendants Wintour, Conde Nast, Morgan and Cary (who both acted in concert with and urged and induced plaintiff's false arrest) in concert with defendants Shumelwitz and Belkin Burden, falsely arrested and imprisoned plaintiff without probable or any cause and signed a complaint against plaintiff with the substantial aid of defendants Vance, DelPizzo and Garnaas-Holmes which he and the other defendants knew had no basis whatsoever, and defendant Patino further attempted to prevent plaintiff from getting medical treatment for high blood pressure, and when he was overruled by a sergeant, called to complain on the way to Bellevue, where plaintiff's blood pressure was approximately 190, all of which conduct caused plaintiff severe emotional distress, humiliation and serious deprivation of his rights, including under the First, Fourth and Fourteenth Amendments.

48.  Defendant Patino lied to plaintiff repeatedly during his arrest, including that defendant Morgan had videotaped him standing next to her to cause him severe stress without disclosing the actual charges in the complaint which he said plaintiff could learn at the arraignment and told him, as he had during the first arrest when plaintiff sought to explain why there was no probable cause for his arrest, that "you talk too much" and further that "if you don't shut up, I will delay your processing again this time".

49.  All of defendants' conduct alleged in the complaint above was outrageous, malicious and in willful, wanton and reckless indifference and disregard of plaintiff and his interests, well-being and constitutional and state law rights and was conducted in extreme bad faith with the intention of causing plaintiff severe harm, severe emotional

distress and humiliation as well as serious injury to and violations of his fundamental constitutional rights and his rights of privacy without any justification whatsoever, which it did, for the improper and unconstitutional purpose of retaliating for and deterring and punishing the exercise of plaintiff's constitutional rights and to prevent him from seeking redress for their violation and to deprive him of his liberty and due process, in violation of his rights under the First, Fourth and Fourteenth Amendments, including to due process, and by such illegal means to severely harm plaintiff to protect the illegal "franchise" conducted by defendants Morgan and Cary, entitling plaintiff, among other things, to substantial compensatory and punitive damages, namely compensatory damages in an amount not less than $5,000,000 and punitive damage in an amount not less than $15,000,000.

   **WHEREFORE**, Plaintiff demands judgment against defendants, and each of them, in a sum not less than 5,000,000 for compensatory damages and in a sum not less than $15,000,000 for punitive damages for the wanton, willful, reckless and malicious harm caused him, plus interest, costs, disbursements and such other and further relief as the

Court may deem just and proper.

Dated: June 10, 2013

**PLAINTIFF DEMANDS A TRIAL BY JURY OF ALL ISSUES SO TRIABLE**

Gerard A. Corsini

Gerard A. Corsini
**Plaintiff** *Pro Se*
433 W. 21st St., Apt 9A
New York, NY 10011
212-255-3232
gcorsini@gmail.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————X

GERARD CORSINI,

                Plaintiff,

-against-

MAYOR MICHAEL R. BLOOMBERG, THE CITY OF
NEW YORK,  FIRST DEPUTY MAYOR PATRICIA E.
HARRIS, POLICE COMMISSIONER RAYMOND W.
KELLY, COMMISSIONER KATHERINE L. OLIVER,
COMMISSIONER ROBERT LIMANDRI, DEPUTY
COMMISSIONER JOHN BATTISTA, DEPUTY
INSPECTOR ELISA A. COKKINOS, DETECTIVE
ERIC PATINO, DISTRICT ATTORNEY CYRUS R.
VANCE, JR., ASSISTANT DISTRICT ATTORNEY
LISA DELPIZZO, ASSISTANT DISTRICT ATTORNEY
DANIEL GARNAAS-HOLMES, DEPUTY INSPECTOR
ELISA A. COKKINOS, POLICE OFFICERS BENICIE
ALEZY, VICTOR COLON AND JESSICA
BUTTACAVOLI AND SGT. DIANA ANITRA OF THE
CITY OF NEW YORK, ELIZABETH MORGAN
AKA ELIZABETH MORGAN CARY, JONATHAN CARY,
DANIEL J. MCKAY, AARON SHIMULEWITZ, BELKIN
BURDEN WENIG & GOLDMAN, LLP, ANNA WINTOUR,
CONDE NAST CORP. AND JOHN DOES 1-25 AND
JANE DOES 1-25,

                Defendants.

————————————————————————X

Civil Action No.
12CV8058 (LTS)(MHD)

FIRST AMENDED
COMPLAINT

PLAINTIFF DEMANDS
A TRIAL BY JURY OF
ALL CLAIMS AND
ISSUES SO TRIABLE

Gerard A. Corsini
Plaintiff, *Pro Se*
433 W. 21st St., Apt. 9A
New York, NY 10011
212-255-3232
Gcorsini@gmail.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GERARD CORSINI
_____

(List the name(s) of the plaintiff(s)/petitioner(s).)

12 Civ. 8058 (LTS) (MHD)

- against -

Mayor Bloomberg et al
_____
_____

**AFFIRMATION OF SERVICE**

First Amended Complaint

(List the name(s) of the defendant(s)/respondent(s).)

I, (print your name) _Gerard Corsini_, declare under penalty of perjury that I
served a copy of the attached (list the names of the documents you served): _in all Counsel_
_of Record, Eric Aarons, Esq. Alison Mrr, Esq._
_Christina Anto, Esq. and David Brand, Esq._
upon all other parties in this case by (state how you served the documents, for example, hand delivery, by pdf
mail, overnight express) _by acceptance of all counsel of record_ to the attached
following persons (list the names and addresses of the people you served): _____
_all Counsel above_
_____
_____

on (date you served the document(s)) _6/10/13_

_6/10/13_
Dated

Signature _Gerard Corsini_

Address _133 W. 21st St. #9A_
_NYC 10011_

City, State _NY_

Zip _10011_

Telephone Number _212-255-3232_

E-Mail Address

*Rev. 01/2013*