UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

GERARD CORSINI,

             Plaintiff,

      -v-                                     No.  12 Civ. 8058 (LTS)(MHD)

MAYOR MICHAEL R. BLOOMBERG et al.,

             Defendants.


--------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

           Plaintiff Gerard Corsini ("Plaintiff"), filed a complaint on November 5, 2012, against former New York City Mayor Michael Bloomberg, the City of New York, and a variety of other parties, asserting causes of action under 42 U.S.C. §§ 1983 and 1985 arising from an alleged conspiracy to, inter alia, falsely arrest and maliciously prosecute Plaintiff. Plaintiff thereafter filed an amended complaint (the "AC").[1] Defendants Aaron Shmulewitz and Belkin Burden Wenig & Goldman, LLP (the "Belkin Defendants"), have moved pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings.[2] Each of the other named defendants has moved to dismiss the AC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[3]

---

[1]     Defendants filed three motions to dismiss the original filed complaint, prior to Plaintiff's filing of the AC, which are now moot. (See docket entry nos. 39, 49, and 53.)

[2]     The Belkin Defendants also moved for Rule 11 sanctions against Plaintiff. (Docket entry no. 75.)

[3]     Defendants Elizabeth Morgan, Jonathan Cary and Daniel J. McKay, who live and/or work at the premises where the complained-of photography takes place (the "Chelsea

The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

The Court has carefully reviewed all the submissions of the parties.  For the following reasons, the defendants' motions to dismiss the Amended Complaint with prejudice are granted in their entirety.  The Belkin Defendants' motion for Rule 11 sanctions is granted as discussed herein.

<u>B</u>ACKGROUND

Plaintiff alleges that he has been the target of a city-wide conspiracy among the former Mayor, the current District Attorney, sundry individuals within the New York Police Department (the "NYPD") ranking from officers to the former police commissioner, a magazine publishing company, and private citizens, to violate his First, Fourth, and Fourteenth Amendment rights in order to protect illegal favored treatment of the film industry and suppress his exercise of First Amendment rights in opposition to what he believes are illegal film and photography shoots. The following allegations are taken from the Amended Complaint unless otherwise noted.

Plaintiff has been an attorney for forty years and has been admitted to practice in the states of New York, Massachusetts, and California.  (<u>See</u>, <u>e.g.</u>, AC at Ex. 5 (letter to District Attorney Vance, dated October 24, 2011, on "Law Offices of Gerard A. Corsini" letterhead, asserting that "it has been nearly forty years since my graduation from law school and my admissions by examination to the bars of New York, Massachusetts and California.").)  Plaintiff,

---

Defendants"); defendants Cyrus R. Vance, Jr., Daniel Garnaas-Holmes and Lisa Delpizzo (together, the "DA Defendants"); and defendants the City of New York, Ray Kelly, Mayor Michael Bloomberg, Deputy Inspector Cokkinos, Officer Colon, Officer Alezy, Officer Buttacavoli, Sergeant Anitra, and Detective Patino (together, the "City Defendants") have each moved to dismiss the AC pursuant to Rule 12(b)(6).  (Docket entry nos. 78, 81, and 84.)  The City Defendants also seek dismissal of the AC as a sanction for improper conduct on the part of Plaintiff.  Defendants Anna Wintour and Condé Nast Corp. (the "Publishers") have also moved to dismiss the AC pursuant to Rule 12(b)(6).  (Docket entry no. 95.)

who was at all relevant times a resident of 433 West 21st Street in New York City, alleges that his

neighbors, defendants Ms. Morgan and Mr. Cary, operate a "commercial film and photography

studio [in their residence] to the great disruption of the neighborhood" in violation of various

local laws and regulations.  (AC at ¶¶ 1, 6.)[4]  Plaintiff has been making complaints about the

activities at the Morgan/Cary premises since at least 2009.  Plaintiff alleges that he endeavored to

expose this illegal business by photographing and video recording the Chelsea Defendants and

various other people involved with the filming and photography at the Morgan/Cary premises, to

document illegal activities and petition government officials to intervene.  Defendant created

extensive documentation of the alleged illegal uses of the premises.  (See AC at Ex 3.)  Plaintiff

alleges that all of the defendants acted in concert to protect this illegal film and photography

business by conspiring to violate his rights under the First, Fourth, and Fourteenth Amendments

to the Constitution of the United States and to commit a variety of tortious offenses against him,

including defamation, false imprisonment, assault, and battery.

       Plaintiff alleges that "the policy and custom of the City, including of Mayor

Bloomberg and Commissioner Kelly, [is] to permit the 'film' industry to violate the laws and

defendants Kelly's, Bloomberg's, Patino's, Vance's, DelPizzo's, Garnaas-Holmes', and the

City's willingness as part of that policy to go to any lengths necessary, including plaintiff's

multiple unconstitutional false arrests and malicious prosecutions, to prevent exposure of that

policy~ custom and usage and of the violations of law by the 'film industry' permitted and

covered up thereby."  (AC at ¶ 23.)  Plaintiff alleges that the Publishers were involved in illegal

---

[4]     It appears to be undisputed that filming and photography took place at the
Morgan/Cary premises.  Plaintiff contends that the activity violated zoning and permit
requirements.

photographic sessions from June 9 - 11, 2011, as well as on other occasions, at the Morgan/Cary

residence.  (AC at ¶ 9.)

On December 2, 2010, the Belkin Defendants, who are Ms. Morgan's attorneys,

sent Plaintiff a letter (the "Letter") advising him that Ms. Morgan had informed defendant

Shmulewitz of Plaintiff's efforts to thwart Ms. Morgan's use of her home, "including: stating

publicly that Ms. Morgan has a commercial photo studio in her house (which is false); stating

publicly that Ms. Morgan is violating the law by doing so (which is also false); verbally accosting

Ms. Morgan at her house and in the street; and verbally accosting, harassing and photographing

guests and visitors of Ms. Morgan on their way into and from her house."  (Id. at Ex. 4.)  The

Letter asked Plaintiff to "cease and desist immediately from all contact with [Ms. Morgan], as

well as the conduct delineated [in the Letter] . . . ."  (Id.)  Plaintiff asserts that the Letter "forms

the bedrock of lies to which all of the deceit, false reporting, perjury, false arrests, malicious

prosecutions and First and Fourteenth Amendment violations can be traced" because it

demonstrates the formation of a conspiracy to have him falsely arrested for harassment and

stalking.  (AC at ¶ 1(a)(i)(dd).)  Plaintiff alleges that the Belkin Defendants devised a plan of

inducing a variety of witnesses to lie and perjure themselves to create a false basis for his arrests.

Plaintiff alleges that Ms. Morgan subsequently "importuned" his arrest on several

occasions by falsely complaining to the NYPD that he was stalking and harassing her.

Accordingly, Plaintiff alleges that, on April 29, 2011, while he was photographing a variety of the

film and photography activities on his street, City Defendants Buttacavoli, Alezy, Anitra and an

unidentified officer falsely arrested Plaintiff for harassment.  He also alleges that they "grabb[ed]

his hand and video camera and attempt[ed] to wrestle it from him by means of such offensive

physical contact after placing him in fear of same."  (AC at ¶ 1(a)(i)(aa).)  Plaintiff also alleges

that his April 29, 2011, arrest was pursuant to "the importuning inducements and urgings [sic] of defendants Wintour, Conde Nast[,] Morgan, Cary, McKay with the substantial aid and assistance of [the Belkin Defendants.]" (Id.)  In an August 31, 2011, criminal court complaint that is annexed to Plaintiff's amended complaint as Exhibit 7, Defendant Detective Patino states that he was informed that, on April 26, 2011, at approximately 7:00 a.m., Ms. Morgan "left her residence accompanying [her] two young daughters and observed [Plaintiff Corsini] standing at the bottom of the stairs to [Morgan's] home," that "[Corsini] blocked [Morgan's] path and refused to move for some time, while yelling, in substance, at [Morgan], YOU ARE A MANIPULATIVE LIAR AND ARE RUINING THIS BLOCK."  (AC at Ex. 7.)  A police report attached to the AC, dated August 30, 2011, further details the April 26, 2011 incident.  (AC at Ex. 3.)  Detective Patino wrote that, "on 4/26/11 [Ms. Morgan] states that she was already becoming very frightened for her and her families [sic] safety that she had to start using a car service to pick her up at the door to take her children to school.  On this date [Ms. Morgan] walked out of her building her [sic] two kids hands and [Plaintiff] blocked her path to the car and would not get out of the way." (Id.)  In the report, Detective Patino further noted that Plaintiff admitted to taking photographs and video of Ms. Morgan and her family, acknowledged the April 26 incident, and noted "if she thinks im [sic] crazy why didnt [sic] she just cross the street and or walk around me." (Id.)  Plaintiff does not, however, allege any other specific facts indicative of conspiratorial interaction between any of these defendants and any police or other authorities.  Plaintiff further alleges that he was handcuffed tightly during this arrest, and that the handcuffing caused him pain and "physical injury."  (AC at ¶ 1(a)(i)(aa).)  Plaintiff proffers, in his opposition papers, that he suffered "long-term nerve damage" as a result of this incident.  (Docket entry no. 106 at pg. 33.)  Plaintiff alleges

that the state court criminal complaint related to this incident was dismissed by the court on June

20, 2011.  (AC ¶ 21.)

       Plaintiff alleges that, on June 21, 2011, he met with Deputy Inspector Elisa A.

Cokkinos to discuss his arrest on April 29, 2011.  Deputy Inspector Cokkinos sent Plaintiff a letter

dated June 24, 2011, which confirmed the June 21 meeting and noted that:

> I am pleased we had the opportunity to meet in my office on June 21, 2011 and
> candidly discuss our mutual concerns regarding film production at 441 West 21st
> Street . . . . My supervisors and police officers stand ready to assist and impartially
> enforce applicable Vehicle and Traffic Laws and Quality of Life issues stemming
> from film production.  It is the intention of the Police Department that all applicable
> laws be enforced as promulgated by the appropriate agencies.  This includes
> permits issued by the Mayor's Office of Film and Television Production.  If there
> are violations observed by responding police officers the situation will be remedied
> and proper notification will be made as required.

(AC at Ex. 2.)  In the Amended Complaint, Plaintiff characterizes the Cokkinos letter as "thanking

plaintiff for meeting with her, expressing mutual concern about the issues raised, including film

activity both at Morgan's and Cary's property and elsewhere on the block and the disruption and

violations resulting therefrom, and her offering to work to address those violations of mutual

concern, as a direct and proximate result of a policy of reckless indifference to plaintiff's and

others constitutional rights as well as the need for training and supervision of those under her and

defendant Kelly's commands."  (AC at ¶ 27.)

       Plaintiff further alleges that, on June 29, 2011, Detective Colon and an unidentified

individual illegally stopped, detained, and falsely imprisoned him without probable cause.

Plaintiff alleges that this arrest was the product of a call from an unidentified woman in the street

who called him "crazy," "stalker," "interested in young girls," and "a creepy porno mate [sic]" in

order "to lay a false predicate for 'stalking'."  (AC at ¶¶ 1(a)(i)(bb); 28.)  Plaintiff alleges that

Detective Colon and another officer spoke to the unidentified woman at the scene and then

demanded that Plaintiff stop filming a truck parked illegally in front of a fire hydrant and threatened that, if he did not do so, "plaintiff would be taken to a mental ward of a hospital." (Id. at ¶ 28.)

Plaintiff further alleges that employees of the Publishers repeated the "vile defamation of defendant McKay on behalf of defendants Morgan and Cary." (Id. at ¶ 9.) Plaintiff does not allege that Mr. McKay made any defamatory statements himself; rather Plaintiff alleges conclusorily that Mr. McKay, who Plaintiff alleges is employed by Ms. Morgan, induced the unidentified woman to make the statements recited in the preceding paragraph as part of the conspiracy. (Id.; see also id. at ¶ 1(a)(i)(a).)

Plaintiff further alleges that, on August 31, 2011, he was arrested by Detective Patino "with [the] DA defendants' advise [sic] and inducement," based on the allegedly false reports of Ms. Morgan and Mr. McKay. (AC at ¶ 1(a)(i)(cc).) According to Plaintiff, Ms. Morgan filed a complaint with the NYPD stating that "plaintiff's point and shoot camera lit up her whole 8,000 sq. foot house on December 16, 2010, preventing the shoot from proceeding." (Id.) Plaintiff alleges that this statement was false because the photography session had ended before he was photographing the activities in Ms. Morgan's home from the sidewalk. (Id.) The District Attorney's Office filed a criminal Information in the Criminal Court of the State of New York, New York County, related to his August 31, 2011 arrest, charging Plaintiff with two counts of Stalking in the Fourth Degree. (Docket entry no. 114 at Ex. B and D.) The Information alleged that Plaintiff "engaged in a course of conduct directed at Elizabeth Morgan, and knew or reasonably should have known that such conduct was likely to cause reasonable fear of material harm to the physical health, safety, or property of such person . . ." from November 10, 2010 to July 21, 2011. (Id.) The Information further alleged that Plaintiff, during the same period,

"intentionally, and for no legitimate purpose, engaged in a course of conduct directed at Elizabeth

Morgan, and knew or reasonably should have known that such conduct was likely to cause such

person to reasonably fear that her employment, business, or career was threatened, where such

conduct consisted of appearing, telephoning, or initiating communication or contact at such

person's place of employment or business, and [Plaintiff] was previously clearly informed to cease

that conduct."  (Id.)  The Information also charged Plaintiff with intentionally disobeying a court

order on March 13, 2012, and April 4, 2012.  (Id.)

Plaintiff hand-delivered a letter to the District Attorney on October 24, 2011,

seeking to persuade him to dismiss the August 31, 2011, criminal Information voluntarily.

Plaintiff wrote:

> the complaint itself makes clear that the criminal 'offense' alleged is really the
> taking pictures of the complainant's public, commercial activities and the workers
> engaged therein, and not any conduct specifically directed at the complainant, and
> certainly not conduct intended to 'to hound, frighten, intimidate or threaten her'.
> Moreover, even her perjurious embellishments don't satisfy the requirements of the
> penal code, the standards outlined by the Court of Appeals in Stuart or the First
> Amendment for 'stalking', whose meaning is that commonly understood (where
> one pursues another from place to place) and requires that the defendant engage the
> victim by a course of conduct specifically focused on her and designed to hound,
> frighten, intimidate or threaten her.

(AC at Ex. 5.)

On November 2, 2011, Plaintiff was again arrested after complaints by Ms.

Morgan.  Plaintiff alleges that he was arrested because Ms. Morgan complained that he had

violated a protective order on October 18, 2011, but that he was not in fact violating the protective

order at the time.[5]  Plaintiff alleges that the complained of conduct, his walking a dog while on his

---

[5]     The Supreme Court of New York, New York County entered an Order of Protection
against Plaintiff on September 1, 2011, ordering him to "stay away from Elizabeth
Morgan, Jonathan Cary" and certain minor children.  The order also required Plaintiff
to stay away from the home, school, business, place of employment and the "sidewalk

cell phone, on the opposite side of the street from the Morgan/Cary residence while they were not

home, could have not have violated the protective order.  (AC at ¶ 46.)  He alleges that this arrest

was the defendants' retaliation for his refusal to accept, in his criminal case, an "adjournment in

contemplation of dismissal with a permanent protective order."  (AC at ¶ 46.)  Plaintiff was

charged in a complaint, and the charge was later dismissed on speedy trial grounds.  (Docket entry

no. 82 at Ex. F.)

On December 19, 2013, Plaintiff was convicted, after a trial on the criminal

Information related to the August 31, 2011 arrest, of two counts of Stalking in the Fourth Degree

in violation of New York Penal Law sections 120.45(1) and 120.45(3), and one count of

Harassment in the Second Degree, in violation of Penal Law section 240.26(3), for the conduct

which led to his arrest on August 31, 2011.  Plaintiff was also convicted on December 19, 2013, of

Attempt to Commit the Crime of Criminal Contempt in the Second Degree, in violation of section

110/213.50(3), for conduct committed on March 13, 2012.  (Docket entry no. 114 at Exs. A and

B.)  Plaintiff was acquitted of a charge of Attempted Criminal Contempt in the Second Degree

regarding conduct allegedly committed on April 4, 2012.  Plaintiff alleges that the District

Attorney's failure to halt the August 31, 2011, prosecution demonstrates that the District Attorney

was a co-conspirator in violating Plaintiff's constitutional rights.  (AC at ¶ 1(a)(i)(dd).)  Plaintiff

moved to vacate each of his convictions on February 11, 2014, alleging that his guilty verdicts

were attributable to "rampant prosecutorial misconduct," perjury, withholding of Brady materials,

"denial of his right to a jury," and "the serious misconduct and bias of Judge Neil Ross during the

trial."  (Docket entry no. 114 Ex. C.)

_____

directly in front of 441 West 21st Street, on the North side of the street."  (Docket
entry no. 85 at Ex. F.)  In an apparent error, the order was set to remain in force until
"2-29-11," a date months before the order was entered.  (See id.)

Plaintiff alleges that, at many times before and after his arrests, he contacted various people, many of whom he has named in this action as City Defendants or DA Defendants, advising them that his constitutional rights were being violated by the alleged conspiracy to continue photography and film production in his neighborhood.  He cites the failure of these individuals, who include the former Mayor and Police Commissioner, and various City and Police Department officials, to declare the photographic activity illegal and cease taking actions upon the Chelsea Defendants' complaints regarding his behavior as evidence of the officials' membership in a conspiracy with the Chelsea Defendants.  Plaintiff further alleges that these defendants had knowledge of his "legitimate purpose" in photographing the Chelsea Defendants, and thus the various City Defendants had knowledge of the falsity of any claims of stalking or harassment by the Chelsea Defendants against Plaintiff.  For example, Plaintiff alleges that he sent "numerous e-mails to defendant Kelly during and since May 2011, which made defendant Kelly fully aware" of the various alleged constitutional violations and the "policy of corruption within the Police Department and more generally the Bloomberg Administration and its Mayor's Office of Film, Theatre and Broadcasting."  (AC at ¶ 30.)  Plaintiff asserts that the City Defendants are liable for damages for negligent hiring and supervision of the various NYPD officers who are alleged to have violated Plaintiff's constitutional rights by arresting him and keeping him away from the Morgan/Cary residence.

Plaintiff filed a complaint in the Supreme Court of New York, New York County, on August 14, 2012, in which he made virtually the same claims offered in the AC against a substantially identical set of defendants.  All of the defendants moved to dismiss the original state court complaint, which Plaintiff later amended.  The motions were redirected to the amended complaint, pursuant to CPLR § 3211 (a) (1) and (7), by all defendants (other than the City

Defendants, who moved against the amended complaint only on technical grounds of untimeliness), and the Belkin Defendants also sought sanctions.  In her opinion dismissing the amended complaint, Justice E. Kathryn Freed stated that, "[a]though plaintiff's claims against Morgan, and Cary, and even more so his claims against Shmulewitz and Belkin, are meritless, plaintiff's filing of the amended complaint does not, of itself, warrant the imposition of sanctions." Corsini v. Morgan, et al., 2013 N.Y. Misc. LEXIS 2662, at *15 (N.Y. Sup. Ct. Jun. 20, 2013).

DISCUSSION

In considering a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the Court applies the same standards used for the determination of a motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Cortes v. City of New York, 700 F. Supp. 2d 474, 480–81 (S.D.N.Y. 2010).  Thus, the Court will resolve each of Defendants' motions under the same standard.

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard applies to all civil actions.  Iqbal, 556 U.S. at 684.[6]  "The pleading standard . . . does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678 (2009) (quoting

---

[6]     Plaintiff urges the court to construe his claims liberally, because, in the case of a pro se litigant, a court generally reads pleadings leniently and construes them to raise "the strongest arguments that they suggest."  See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999).  However, attorneys appearing pro se "cannot claim the special consideration which the courts customarily grant to pro se parties." Pietrangelo v. Alvas Corp., 686 F.3d 62, 63 n. 1 (2d Cir. 2012) (quoting Holtz v. Rockefeller & Co., 258 F.3d 62, 82 n.4 (2d Cir. 2001)).  As Mr. Corsini is admitted to the bar in New York and claims to have years of experience as an attorney, he is not entitled to liberal construction of his complaint.

Twombly, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S. at 555).  Vague or conclusory allegations of a conspiracy to deprive a plaintiff of his constitutional rights are not sufficient to state a claim upon which relief may be granted.  X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 71 (2d Cir. 1999) (citing Thomas v. Roach, 165 F.3d 137, 147 (2d Cir. 1999)).  The pleadings must contain factual allegations that raise a "right to relief above the speculative level."  Dawkins v. Gonvea, 646 F. Supp. 2d 594, 603 (S.D.N.Y.2009) (quoting Twombly, 550 U.S. at 555).

　　　　In evaluating a motion to dismiss a complaint for failure to state a claim, the court may consider the complaint itself, documents that are attached to or referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken.  See, e.g., Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).  A court may review the arrest reports not for the truthfulness of the complaints of a victim, but to determine that a complaint was made and the content of that complaint for the purposes of probable cause.  See Dzwonczyk v. Syracuse City Police Dep't, 710 F. Supp. 2d 248, 259, 266 (N.D.N.Y. 2008).

　　　　Plaintiff's Amended Complaint consists principally of a laundry list of conclusory allegations of legal transgressions and conspiratorial activities, and is largely devoid of factual content beyond the particulars of arrests and Plaintiff's own prior complaints to authorities.  Because Plaintiff's core allegations of conspiratorial harm turn on his contentions that he was falsely arrested and maliciously prosecuted in order to dissuade him from exercising his First Amendment rights in a legitimate fashion, the Court will first examine the pleading of his false arrest, excessive force, malicious prosecution, and First Amendment Claims.  The Court presumes

in this connection that his claims are brought principally pursuant to 42 U.S.C. § 1983 to redress

violations of his rights under the First, Fourth, and Fourteenth Amendments to the Constitution of

the United States.

Fourth Amendment Claims - False Arrest and Excessive Force

"Under New York state law, to prevail on a claim of false arrest a plaintiff must

show that '(1) the defendant intended to confine him, (2) the plaintiff was conscious of the

confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not

otherwise privileged.'" Jocks v. Tavernier, 316 F.3d 128, 134-35 (2d Cir. 2003). "Claims for false

arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth

Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for

false arrest or malicious prosecution under state law." Jocks, 316 F.3d at 134.  "[N]o federal civil

rights claim for false arrest can exist where the arresting officer had probable cause." Curley v. Vill.

of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) (citing Singer v. Fulton County Sheriff, 63 F.3d 110, 119

(2d Cir. 1995).  Moreover, if an arrest is made pursuant to a probable cause determination, no inquiry

into the underlying intent is necessary, and a claim of retaliatory arrest in violation of the First

Amendment fails.  Curley, 268 F.3d at 73.

"When determining whether probable cause exists courts must consider those facts

available to the officer at the time of the arrest and immediately before it, as probable cause does

not require absolute certainty." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (internal

quotations and citations omitted).  Police have probable cause to arrest if they receive information

from a putative crime victim, "unless the circumstances raise doubt as to the person's veracity."

Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006); Martinez v. Simonetti, 202 F.3d 625, 634

(2d Cir. 2000).  Furthermore, "[i]n cases involving arrests for violating a protective order, courts in

this circuit have found that the arresting officer's awareness of the protective order is itself a

significant factor in establishing probable cause."  Carthew v. Cnty. of Suffolk, 709 F. Supp. 2d

188, 197 (E.D.N.Y. 2010) (citing Dudley v. Torres, No. 05 Civ. 1729, 2008 WL 2149603, at *5

(E.D.N.Y. May 21, 2008)).

    Plaintiff's claim of false arrest for the August 31, 2011, arrest is barred because he

was convicted of the offense for which he was arrested.  See Magnotta v. Putnam Cnty. Sheriff, 13

Civ. 2752, 2014 WL 705281, at *5 (S.D.N.Y. Feb. 24, 2014) ("The common-law rule, equally

applicable to actions asserting false arrest, false imprisonment, or malicious prosecution, was and

is that the plaintiff can under no circumstances recover if he was convicted of the offense for

which he was arrested' because 'where law enforcement officers have made an arrest, the resulting

conviction is a defense to a § 1983 action asserting that the arrest was made without probable

cause.").

    Plaintiff's remaining claims against the arresting officers also fail because, in each

case, Plaintiff alleges that his arrest was made pursuant to a complaint, or multiple complaints,

lodged by a purported victim.  In the Second Circuit, "police officers, when making a probable

cause determination, are entitled to rely on the victims' allegations that a crime has been

committed."  Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) (citing Singer v. Fulton

Cnty. Sherriff, 63 F.3d 110, 119 (2d Cir.1995)).  Plaintiff acknowledges that Ms. Morgan

complained of his harassment to the police on April 29, 2011, before he was detained, but alleges

that her complaint was a false one.  Indeed, Plaintiff contends that the conspiracy against him is

based on "a common plan for the Belkin Defendants to have defendants Morgan and McKay . . .

make false reports and commit perjury in connection therewith to cause false arrests and malicious

prosecutions of plaintiff."  (AC at ¶ 1(a)(i)(aa), pg. 4.)   The content of Ms. Morgan's complaint is

indicated in a police report dated August 30, 2011, which Plaintiff attached to the AC.  There, in

which Detective Patino wrote that "on 4/26/11 [Ms. Morgan] states that she was already becoming

very frightened for her and her families [sic] safety that she had to start using a car service to pick

her up at the door to take her children to school.  On this date [Morgan] walked out of her building

her [sic] two kids hands and [Plaintiff] blocked her path to the car and would not get out of the

way."  Ms. Morgan alleged that Plaintiff shouted at her, " YOU ARE A MANIPULATIVE LIAR

AND ARE RUINING THIS BLOCK."  Although Plaintiff disputes certain of the allegations

attributed to Ms. Morgan – for example Morgan's supposed allegation that Plaintiff's point-and-

shoot camera's flash was "lighting up the whole house" – he does not dispute that the April 26,

2011, incident took place.  In the report, Detective Patino wrote that Plaintiff admitted to taking

photographs and video of Ms. Morgan and her family and acknowledged the April 26 incident, and

that Corsini had stated "if she thinks im [sic] crazy why didnt [sic] she just cross the street and or

walk around me."  According to Plaintiff, Ms. Morgan also filed an earlier complaint, on

December 10, 2010, with the police, stating that Corsini had taken pictures of the inside of her

house and had disrupted a photography session.  Thus, Plaintiff's own allegations are sufficient to

demonstrate that his April 29, 2011, arrest was made pursuant to multiple complaints of a

purported victim and, as such, police had probable cause to arrest Plaintiff for harassment or

stalking.[7]

---

[7]      In New York, "[a] person is guilty of harassment in the second degree when, with
intent to harass, annoy or alarm another person : . . . [h]e or she engages in a course
of conduct or repeatedly commits acts which alarm or seriously annoy such other
person and which serve no legitimate purpose."  N.Y. Penal Law § 240.26(3)
(McKinney 2012).

In New York, a person is guilty of Stalking in the Fourth Degree where he commits
conduct that "is likely to cause reasonable fear of material harm to the physical
health, safety or property of such person, a member of such person's immediate

Plaintiff alleges that he was unlawfully detained, on June 29, 2011, when an unidentified woman called him "crazy" and a "stalker" and called and spoke in person with the police.[8]  Plaintiff's contention that the police were not entitled to rely on this unidentified person's report of stalking behavior is unfounded.  Cf. Ackridge v. New Rochelle City Police Dep't, 09 Civ. 10396, 2011 WL 5082421, at *7 (S.D.N.Y. Sept. 26, 2011) report and recommendation adopted, 09 Civ. 10396, 2011 WL 5101570 (S.D.N.Y. Oct. 25, 2011) (distinguishing cases where probable cause was asserted based on anonymous tips from the situation where a witness speaks with police and identifies the suspect).  Plaintiff alleges that the woman spoke to the police at the scene before the officers detained him.  Therefore, the police could properly assess the reliability of the witness as to whether her statement demonstrated a basis for probable cause.  See Marinis v. Vill. of Irvington, 212 F. Supp. 2d 220, 223 (S.D.N.Y. 2002) (noting that rationale for discounting anonymous tips is an officer's inability to determine the credibility of the witness, along with the witness's ability to make "unsupported allegations with impunity").  Furthermore, even assuming that the complaint was an anonymous tip, the police were entitled to determine probable cause based on the totality of the circumstances, including Ms. Morgan's previous complaint of stalking that Plaintiff has alleged was made to police.  See United States v. Fama, 38 F. App'x 70, 72 (2d

_____

family or a third party with whom such person is acquainted;" or "is likely to cause such person to reasonably fear that his or her employment, business or career is threatened, where such conduct consists of appearing, telephoning or initiating communication or contact at such person's place of employment or business, and the actor was previously clearly informed to cease that conduct."  N.Y. Penal Law § 120.45 (1) & (4) (McKinney 2012).

[8]    Additionally, the Prosecutor's Information upon which Plaintiff was convicted charges him with stalking Ms. Morgan "during the period from on or about November 10, 2010 to on or about July 21, 2011."  (Docket entry no. 114 Ex. B.)  Because the April 29, 2011, and June 29, 2011, arrests for stalking behavior occurred within that period, Plaintiff's false arrest claims relating to those arrests are also barred by his conviction.

Cir. 2002) (anonymous tips suffice to establish probable cause where supported by independent police work).

Finally, Plaintiff alleges that he was arrested on November 2, 2011, when Ms. Morgan again called the police and reported that he was in violation of a protective order against his stalking or harassing her by approaching her residence.  The existence of the protective order, and Ms. Morgan's complaint regarding Plaintiff's alleged violation of it, are indicative of probable cause for the crime of contempt of the order.

The police were entitled to credit each of these complaints as bases for probable cause to believe that Plaintiff had committed or was committing the crime of stalking.  Thus, Plaintiff's own allegations establish that each of the complained-of arrests or imprisonments were made pursuant to probable cause determinations, and thus, Plaintiff's claims for false arrest fail as a matter of law.

Plaintiff's basic complaint regarding his arrests is that officers credited his victims' statements more than his protestations of innocence.  Plaintiff alleges that he pleaded his innocence to officers based on his "legitimate" First Amendment protected purposes for his behavior; however, a police officer is not required to credit a suspect's pleas of innocence.[9]  See

---

[9]     Plaintiff's opposition to the City Defendants' motion to dismiss was filed after his conviction and reads much like an appeal from his criminal conviction, asserting, inter alia, that "[p]rosecution of Plaintiff criminalizes pure free speech and expression."  To the extent that Defendant argues that the First Amendment, as incorporated to the states by the Fourteenth Amendment, renders the New York Penal Code as applied to him in his December 19, 2013, conviction invalid, he has no remedy under section 1983.  Rather, to challenge the conviction in the District Court, he must exhaust state remedies and file a petition under 28 U.S.C. § 2254.  Cf. Heck v. Humphrey, 512 U.S. 477, 486-87 (1994) ("[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C.

Obilo v. City Univ. of City of New York, 01 Civ. 5118, 2003 WL 1809471, at *9 (E.D.N.Y. Apr.

7, 2003) ("[I]t is not unreasonable for police officers to rely on accounts provided by a victim or

officer, even when an arrestee proclaims his innocence.").

Plaintiff's excessive force claim against the City Defendants, based on his

handcuffing on April 29, 2011, also fails to state a cause of action.  A claim for excessive force, in

violation of the Fourth Amendment, will lie if the force applied against the plaintiff was

"objectively unreasonable" in the "totality of the circumstances faced by the officer on the scene."

Lennon v. Miller, 66 F.3d 416, 425 (2d Cir. 1995).  Excessive force claims require allegations of

serious or harmful force rather than merely a de minimis use of force.  Pierre v. City of New York,

12 Civ. 9462, 2014 WL 56923, at *8 (S.D.N.Y. Jan. 7, 2014).  "To assess a claim for excessive

force based on handcuffing, the Court should consider evidence that: 1) the handcuffs were

unreasonably tight; 2) the defendants ignored the arrestee's pleas that the handcuffs were too tight;

and 3) the degree of injury to the wrists."  Pelayo v. Port Auth., 893 F. Supp. 2d 632, 642

(S.D.N.Y. 2012) (internal quotation marks omitted).  Courts in this Circuit have sustained claims

for excessive force for overly tight handcuffs where a plaintiff alleged "continuing injury" that is

"beyond temporary discomfort."  E.g., Lynch ex rel. Lynch v. City of Mount Vernon, 567 F. Supp.

2d 459, 468 (S.D.N.Y. 2008) (collecting cases).  Here, Plaintiff has alleged merely that he

complained that the handcuffs were too tight and that he suffered "physical injury," without

specifying any factual content about the injury.[10]  This conclusory allegation of injury is

_____

§ 2254.").

[10]  In his Opposition papers, Plaintiff further proffers that he has suffered "nerve
damage" as a result of the handcuffing.  This conclusory allegation is unsupported by
any reference to medical records or other facts concerning the nature and extent of the
alleged injury.

insufficient to plead plausibly the third element of a viable handcuffing-related claim of excessive

force.  Consequently, this claim is dismissed.

Fourteenth Amendment - Malicious Prosecution

        To state claims under section 1983 and New York state law for malicious

prosecution, a plaintiff must establish that: "(1) the defendant either commenced or continued a

criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was

no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted

with actual malice."  Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991).  A plaintiff "must plead

facts sufficient to establish a lack of probable cause" at the initiation or continuation of the

criminal proceeding.  Landon v. Cnty. of Orange, 08 Civ. 8048, 2009 WL 2191335, at *8

(S.D.N.Y. July 23, 2009).

        The District Attorney is a representative of the State of New York, and thus he is

immune from liability for actions taken in his official capacity under the Eleventh Amendment to

the United States Constitution.  "The Eleventh Amendment, with few exceptions, bars federal

courts from entertaining suits brought by a private party against a state in its own name."  Ying

Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993).  "The immunity to which a

state's official may be entitled in a § 1983 action depends initially on the capacity in which he is

sued.  To the extent that a state official is sued for damages in his official capacity, such a suit is

deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment

immunity belonging to the state."  Id.  Thus, to the extent Plaintiff is seeking damages against the

DA Defendants in their official capacity, this Court has no jurisdiction to adjudicate the claim.

        To the extent that Plaintiff is suing the DA Defendants in their individual

capacities, his claims fail because they enjoy absolute immunity from liability for their

prosecutorial actions.  See Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993).  A state prosecutor enjoys absolute immunity for all conduct that is "intimately associated with the judicial phase of the criminal process," including "in initiating a prosecution and in presenting the State's case."  Id. at 270.  Thus, any claim of malicious prosecution as to the DA Defendants based on their prosecution of the charges against him, is barred by absolute prosecutorial immunity.[11]

Plaintiff's related claim, that the DA Defendants are liable for the alleged August 31, 2011, false arrest because they gave the police officers legal advice related to that arrest, must fail in light of Plaintiff's subsequent conviction.  See Magnotta, 2014 WL 705281, at *5.  To the extent Plaintiff alleges that the DA Defendants offered advice as to the probable cause determinations for his other arrests or imprisonments, the claims fail because the probable cause determinations leading to each of Plaintiff's arrests had sufficient bases, as discussed above, and he has proffered insufficient facts to establish a lack of probable cause at any point during his prosecution.

Conspiracy to Deprive Plaintiff of Constitutional Rights

Plaintiff has failed to offer sufficient factual allegations to plead plausibly any type of conspiracy among the wide array of defendants.  The claims against the majority of the Defendants rely on Plaintiff's unsupported conspiracy theory to impute to them various actions of others as the bases for various theories of liability, including "importuning" Plaintiff's arrest and prosecution.

Plaintiff's sole factual allegation with respect to the Publishers is that they participated in photography with the Chelsea Defendants at the residence.  Based on this allegation

---

[11]     It appears that Plaintiff has withdrawn his claims for malicious prosecution as against the DA Defendants.  (See Docket entry no. 105 at 13 ("The DA defendants are only sued for advice rendered before arraignment, not their malicious prosecution.").)

alone, Plaintiff concludes that the Publishers must be involved in a conspiracy to deprive him of

his civil rights.  This conspiracy charge is precisely the type of conclusory allegation that is

insufficient to state a claim.  Absent facts indicative of the existence of a conspiracy, and of

defendants' knowing and voluntary joinder in that conspiracy, the claims cannot be sustained.[12]

Plaintiff's vague allegations regarding membership of District Attorney Vance, and

the other DA Defendants, in a conspiracy to falsely arrest him also fail to state a claim.  For

example, Plaintiff alleges that, because he sent a letter to District Attorney Vance explaining his

innocence and the District Attorney's office nevertheless proceeded with the prosecution against

Plaintiff, the District Attorney must be part of a city-wide conspiracy to deprive Plaintiff of his

constitutional rights.  However, Plaintiff alleges nothing that is indicative of an intention to violate

his rights, rather he simply alleges actions of the DA Defendants taken on the basis of complaints

and that the DA Defendants did not concur in his perspective as to what the law requires.

Consequently, Plaintiff's claims against the DA Defendants based on an alleged conspiracy to

violate his civil rights must be dismissed.

Res Judicata Bars Plaintiff's Claims against
the Chelsea Defendants and the Belkin Defendants

The doctrine of res judicata bars a party to a prior litigation from raising a claim or

defense in a later suit that was or could have been litigated in that prior proceeding.  See Chase

Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 345 (2d Cir. 1995).  "When an asserted

claim is identical to one that has been previously litigated, relitigation may be barred to conserve

---

[12]   To the extent Plaintiff asserts that the Publishers are liable for his New York tort
claims of false arrest or false imprisonment, his claims are based on the allegations
against the City Defendants, which fail for the reasons discussed herein.  Plaintiff
has withdrawn his claims for defamation, assault, and battery against the Publishers.
(Docket entry no. 105 at 11-12.)

judicial resources and to allow the prevailing party to enjoy the benefits of its victory and avoid

further costs." Celotex, 56 F.3d at 345.  Only final judgments on the merits are given preclusive

effect.  See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 400 (1981).

       "New York has adopted a transactional approach to res judicata." Clarkstown

Recycling Ctr., Inc. v. Parker, Chapin, Flattau & Klimpl, 1 F. Supp. 2d 327, 329 (S.D.N.Y.

1998)(Parker, D.J); see, e.g., Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir. 1997);

Schulz v. Williams, 44 F.3d 48, 53 (2d Cir. 1994); Hughes v. The Lillian Goldman Family, LLC,

153 F. Supp. 2d 435, 447 (S.D.N.Y. 2001); Creed Taylor, Inc. v. CBS Inc., 718 F. Supp. 1171,

1175 (S.D.N.Y. 1989).  Under this transactional analysis approach, "once a claim is brought to a

final conclusion, all other claims arising out of the same transaction or series of transactions are

barred, even if based upon different theories or if seeking a different remedy." Creed, 718 F.

Supp. at 1175 (quoting O'Brien v. City of Syracuse, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 688,

429 N.E.2d 1158 (1981)) (internal quotation marks omitted).

       Plaintiff filed his amended complaint in his state case, on August 14, 2012.  Justice

Freed entered a judgment dismissing claims against the Belkin Defendants and Chelsea

Defendants on June 20, 2013.  See Corsini v. Morgan, et al., 2013 N.Y. Misc. LEXIS 2662 (N.Y.

Sup. Ct. Jun. 20, 2013).  A simple comparison of the claims asserted in the Amended Complaint

with those described in the state court's decision dismissing Plaintiff's amended complaint in his

state case makes it clear that both cases arise from precisely the same transactions. Compare AC ¶

1("Morgan, Cary and McKay with the substantial aid and assistance of the 'Belkin defendants'

pursuant to a common plan devised by the Belkin defendants to have defendants Morgan and

McKay acting for themselves and as agents for defendant Cary, and in conspiracy with the City

defendants, including defendants Patino [and] Garnaas-Holmes, . . . make false reports and commit

perjury in connection therewith to cause false arrests and malicious prosecutions of plaintiff to deter him from exercising his First Amendment rights to advocate for and seek the enforcement of zoning laws which would prohibit the lucrative business enterprise from which all of said defendants greatly benefit.") with Corsini, 2013 N.Y. Misc. LEXIS 2662, at *14-15 ("[Plaintiff alleges that] Morgan and Cary, aided and abetted by and in conspiracy with defendants Shmulewitz, Belkin and McKay and in furtherance of the above-mentioned common plan, induced, caused and conspired with defendant Patino acting on behalf of himself and [the Municipal Defendants], with their full knowledge and approval . . . to falsely arrest and falsely imprison plaintiff.").

       Whether a dismissal of a state court claim was on the merits is a matter of state law. Cloverleaf Realty of New York, Inc. v. Town of Wawayanda, April 28, 2014, 95 (2d Cir. 2009). In New York, a dismissal is on the merits if granted pursuant Rule 3211(a)(1) of the CPLR, which allows dismissal on the ground that "a defense is founded upon documentary evidence." DDR Const. Servs., Inc. v. Siemens Indus., 770 F. Supp. 2d 627, 647 (S.D.N.Y. 2011). "A dismissal pursuant to both CPLR 3211(a)(1) and (7) is no less on the merits than a dismissal pursuant to CPLR 3211(a)(1) alone." Randall's Island Aquatic Leisure, LLC v. City of New York, 12 Civ. 6039 CM, 2013 WL 2951945, at *4 (S.D.N.Y. June 13, 2013). On the other hand, "a dismissal pursuant to N.Y. C.P.L.R. 3211(a)(7), for failure to state a cause of action, is presumptively not on a case's merits and lacks res judicata effect; indeed a Rule 3211(a)(7) dismissal is only on a case's merits if the rendering court explicitly says so." Randall's Island, 2013 WL 2951945, at *3 (quoting DDR Const. Servs., Inc. v. Siemens Indus., 770 F. Supp. 2d 627, 647 (S.D.N.Y.2011)). However, New York does not "require that the prior judgment contain the precise words 'on the

merits' in order to be given <u>res</u> <u>judicata</u> effect; it suffices that it appears from the judgment that the dismissal was on the merits." <u>Randall's Island</u>, 2013 WL 2951945, at *3.

Although Plaintiff acknowledges that the claims in the AC are nearly identical to the claims in his state court case against the Belkin Defendants and the Chelsea Defendants, he argues that the state case claims were not dismissed on the merits because the Belkin Defendants and Chelsea Defendants merely "couched" their arguments in a motion pursuant to Rule 3211(a)(1), submitting only "further proof of those claims [in his complaint]." (Docket entry no. 105 at pgs. 5-6.)  Justice Freed determined, however, that all of Plaintiff's claims against Defendants Morgan, Cary, and the Belkin Defendants were "meritless." <u>See</u> <u>Corsini</u>, 2013 N.Y. Misc. LEXIS 2662, at *15.  Plaintiff's claims against each of these defendants are therefore barred under the doctrine of <u>res</u> <u>judicata</u>.

<u>City Defendants' Request for Dismissal as Sanction</u>

The City Defendants request that the Court invoke its inherent power to impose the sanction of dismissal on Plaintiff, in light of his voluminous, allegedly abusive, communications with City Defendants' counsel, and an attempt by Plaintiff to impugn the integrity of City Defendants' counsel in a communication to the dean of their law school.

Although a district court has the inherent authority to dismiss a case as a sanction for bad faith litigation conduct, the Supreme Court has recognized this is a "particularly severe sanction" that should be "exercised with restraint and discretion." <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 44 (1991).  In light of the failure of Plaintiffs' claims on the merits the Court need not, and does not, address City Defendants' sanction application.

<u>The Belkin Defendants' Motion for Sanctions</u>

The Belkin Defendants, who are Ms. Morgan's attorneys, have moved for sanctions against Plaintiff pursuant to Federal Rule of Civil Procedure 11.

Rule 11 requires attorneys and pro se litigants to sign all submissions certifying :

that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]

Fed. R. Civ. P. 11(b).  To find that an attorney violated Rule 11, the court must determine that his behavior was "objectively unreasonable."  DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc., 186 F.3d 157, 166 (2d Cir. 1999).  "Sanctions should be imposed where it is patently clear that a claim has absolutely no chance of success."  Smith v. Westchester Cnty. Dep't of Corr., 07 Civ. 1803 SAS, 2013 WL 5192751, at *4 (S.D.N.Y. Sept. 16, 2013).  "Thus, Rule 11 sanctions are appropriate if: the legal contentions contained in a writing are frivolous; or the factual contentions therein do not have evidentiary support."  Id.  Furthermore, a party who re-files an action that is materially identical to an action previously dismissed by a court as being without legal merit is engaging in duplicative litigation that can result in the imposition of monetary sanctions under Rule 11.  Soling v. New York State, 804 F. Supp. 532, 537 (S.D.N.Y. 1992); accord Satterfeld v. Pfizer, Inc., 04 Civ. 3782, 2005 WL 1765708, at *12-14 (S.D.N.Y. July 18, 2005) (noting that duplicative litigation was sanctionable, but declining to impose sanctions because plaintiff was pro se), aff'd , 208 F. App'x 59 (2d Cir. 2006).  Courts have also imposed sanctions where a plaintiff knew or had reason to know that claims were barred by res judicata.  Satterfeld, 2005 WL 1765708, at *13.

"In deciding a Rule 11 motion, a district court must adhere to the procedural rules which safeguard due process rights.  Rule 11 requires that a motion for sanctions be made separately

from any other motion and describe the specific conduct that allegedly violates Rule 11(b).

Furthermore, the motion must be served, but it must not be filed or be presented to the court if the

challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected

within 21 days after service." <u>Shu Lun Wu v. May Kwan Si</u>, 10 Civ. 5380, 2014 WL 458206, at *3

(S.D.N.Y. Feb. 4, 2014) (internal citations and quotation marks omitted).  "[W]hen a district court

finds a violation of Rule 11, the decision whether to impose a sanction for a Rule 11(b) violation is . .

. committed to the district court's discretion." <u>Ipcon Collections LLC v. Costco Wholesale Corp.</u>,

698 F.3d 58, 63 (2d Cir. 2012) (internal quotation marks omitted).

The Belkin Defendants have certified that, on July 1, 2013, they served on Plaintiff a

letter stating their intention to move for sanctions against Plaintiff, attaching their anticipated  motion

for sanctions.  (Docket entry no. 77.)  The Belkin Defendants waited 21 days to file their separate

motion for sanctions and did so on July 22, 2013, after Plaintiff failed to withdraw his claims against

them.  The Belkin Defendants have thus satisfied the procedural requirements of Rule 11.

Plaintiff is an attorney, not a lay <u>pro se</u> litigant, and he must comply strictly with Rule

11 when making submissions to the Court.  <u>See</u> <u>Harbulak v. Suffolk Cnty.</u>, 654 F.2d 194, 198 (2d

Cir. 1981) ("[Plaintiff] is a lawyer and, therefore, he cannot claim the special consideration which

the courts customarily grant to <u>pro se</u> parties.").

The imposition of sanctions is appropriate here because Plaintiff's claims against

the Belkin Defendants are barred under the doctrine of <u>res judicata</u>, were held to be meritless in an

early action, and are objectively frivolous.

Justice Freed noted in her June 20, 2013, opinion that Plaintiff's claims against the

Belkin Defendants in the state court case, which were nearly identical to those raised here, were

meritless, yet Plaintiff persisted in pursuing those claims in this federal forum.  Plaintiff has

doggedly pursued his claims even after he was instructed that they were meritless, and when he

should have known that they were barred by the doctrine of <u>res judicata</u>.  Plaintiff, as an attorney, cannot claim ignorance of Rule 11's prohibition against duplicative litigation.

Moreover, even if Plaintiff had not been informed by the state court that his claims against the Belkin Defendants were meritless, it is clear that the claims against the Belkin Defendants in the AC – which are nearly identical – are objectively frivolous.  These claims are replete with legal conclusions that are unsupported by any factual allegations.  Plaintiff alleges throughout the AC that the Belkin Defendants are the designers of a conspiracy to deprive Plaintiff of his constitutional rights, yet he makes only the single factual allegation that the Belkin Defendants sent him the Letter on December 10, 2010.  Based solely on the Letter, Plaintiff alleges that his "arrest was also caused by the importuning, inducements and urgings [sic] of defendants Wintour, Conde Nast[,] Morgan, Cary, McKay with the substantial aid and assistance of the 'Belkin defendants' pursuant to a common plan devised by the Belkin defendants to have defendants Morgan and McKay . . . make false reports and commit perjury."  (AC at ¶ 1(a)(i)(aa).)  Although Plaintiff repeats this conclusory allegation at least four times in his AC, the repetition of his conspiracy theory in various contexts adds no factual content.  The text of the Letter in no way supports Plaintiff's contention that the Belkin Defendants conspired with others to have Plaintiff arrested; instead, the letter was in the nature of a harassment or stalking victim's attorney advising a perpetrator to cease his illegal conduct.

In order to deter such frivolous and harassing litigation, the Court finds that it is appropriate to impose monetary sanctions in the amount of the Belkin Defendants' costs and fees associated with this action.

CONCLUSION

Each of Plaintiff's claims in the Amended Complaint is dismissed in its entirety with prejudice.

The Belkin Defendants' motion for Rule 11 sanctions is granted to the extent that Plaintiff will be ordered to pay the reasonable attorney's fees and costs that the Belkin Defendants incurred in litigating the motion to dismiss.  The Belkin Defendants must file and serve on Plaintiff an application for such fees and costs, with detailed contemporaneous billing records, by June 6, 2014.  Any objections to the reasonableness of the fees and expenses claimed must be filed by June 20, 2014.

This Order resolves docket entry numbers 39, 49, 53,72, 75, 78, 81, 84, and 95.

The Clerk of the Court is directed to enter judgment in favor of all Defendants, dismissing this case.

SO ORDERED.

Dated: New York, New York
        May 14, 2014

                                    /s/ Laura Taylor Swain
                                   LAURA TAYLOR SWAIN
                                   United States District Judge